UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW LEE JOHNSON,<br>Plaintiff,<br>v.<br>COUNTY OF SANTA CLARA, et al.,<br>Defendants. | Case No. 5:18-cv-06264-EJD<br>**ORDER GRANTING MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 26, 42 |

Plaintiff Andrew Lee Johnson brings eight causes of action against Santa Clara County (the "County") and correctional officers, who were during the relevant times employed by the County, Deputy Ruban, Matthew Reeves, Deputy Dominguez, Jereh Lubrin, Jonathon Benson and Does 1-25 (collectively, except for Lubrin, "County Defendants"), and the city of San Jose (the "City") and San Jose police officers Marco Monzon, Jamie Lee Nichols Hall, Trent Tessler and Does 1-25 (collectively "City Defendants"). Johnson's claims arise from his arrest and the alleged destruction of evidence by City Defendants, his pre-trial detention and the alleged physical and emotional abuse he suffered by County Defendants, and his eventual acquittal. Lubrin answered the Complaint. Dkt. 41. County Defendants filed a Rule 12(b)(6) motion to dismiss the third, fourth, fifth, and sixth causes of action. Dkt. 42. City Defendants filed a separate 12(b)(6) motion to dismiss the seventh and eight causes of action. Dkt. 26. The Court finds that these motions are suitable to take under submission without oral argument pursuant to Civil Local Rule 7-1(b).

Case No.: 5:18-cv-06264-EJD
ORDER GRANTING MOTIONS TO DISMISS
1

Having considered the parties' papers, the Court grants the motions and provides Johnson with leave to amend.

**I.    Factual Allegations**

Johnson is a veteran of the U.S. Army. Compl. ¶¶ 20-21. Following his honorable discharge in 2013, he moved to San Jose to care for a friend from the military who was paralyzed while deployed in Afghanistan. *Id.* ¶ 22. Johnson lived with, and provided for, his friend while taking a 20-unit academic course load. *Id.* ¶¶ 22-23.

On the evening of October 27, 2014, two intoxicated men accosted Johnson while he was returning to his apartment. *Id.* ¶¶ 25-28. One brandished a knife. *Id.* ¶ 28. Fearing for his safety, Johnson fired warning shots from his firearm into the sidewalk, but the men continued menacing Johnson. *Id.* ¶¶ 28-30. Johnson shot one man in the leg and the other in the hip. *Id.* ¶ 30. In shock, Johnson then returned to his apartment. *Id.* ¶ 31

The San Jose police began investigating the shooting within minutes. *Id.* ¶ 32. Defendant Hall interviewed one of the men, Bicente Castro, at the hospital. *Id.* ¶¶ 32-26. Hall both took contemporaneous handwritten notes and audio-recorded the interview on a department-issued device. *Id.* ¶¶ 33-34. He drafted a summary of the interview for an incident report. *Id.* ¶ 35. He then uploaded the audio recording to the department's data management systems and destroyed his handwritten notes. *Id.* ¶¶ 34-35. Defendant Monzon interviewed the other man, Alvaro Castro. *Id.* ¶ 41. Like Hall, he recorded the audio, took handwritten notes, drafted a summary, uploaded the audio recording, and destroyed his handwritten notes. *Id.* ¶¶ 41-43. Every audio recording of these initial interviews was subsequently deleted. *Id.* ¶¶ 37-40, 45-48. Johnson's defense counsel never received either recording. *Id.* ¶¶ 40, 48. Monzon also interviewed the manager of a market near the location of the shooting. *Id.* ¶ 51. The manager showed Monzon footage of Alvaro Castro and Bicente Castro in the market, acting belligerently and jumping over the counter, about 15 minutes before the shooting, but Monzon did not preserve the footage. *Id.* ¶¶ 52-53. Monzon did preserve footage that depicted Johnson entering the market earlier that day. *Id.*

Defendant Tessler interviewed the manager of Johnson's apartment building, who gave

him a thumb drive containing data from Johnson's key fob. *Id.* ¶ 60. Tessler did not disclose the existence of key fob to Johnson's defense, but rather provided the defense with a printout of the data. *Id.* ¶ 61. He represented that the manager had provided the printout. *Id.* Johnson alleges that Tessler altered the data. *Id.* ¶ 62. Johnson and his defense counsel did not learn about the existence of the key fob until the apartment manager mentioned it during trial. *Id.* ¶ 63.

Johnson was arrested on November 12, 2014. *Id.* ¶¶ 7, 73. He appeared for a preliminary hearing in February 2016. *Id.* ¶¶ 177-78. There, the state court reduced the charges from attempted murder to assault with a deadly weapon. *Id.* ¶ 180. The district attorney's office appealed, and the attempted murder charges were reinstated. *Id.* ¶ 181.

During his pre-trial detention, Johnson was placed in solitary confinement. *Id.* ¶¶ 77-78. This decision was based only on the charges against him and not because of his conduct. *Id.* ¶ 78. Johnson was isolated 23 of 24 hours each day, and frequently did not receive state-mandated out-of-cell time and/or exercise time. *Id.* ¶¶ 83-84. This isolation caused his mental health to decline. *Id.* ¶ 82. Allegedly, he was kept in solitary confinement for many months. *Id.* ¶ 89.[1]

In jail, Defendant Lubrin often harassed the prisoners, including Johnson, by berating them and instigating fights between prisoners. *Id.* ¶¶ 104-110. Around March 2015, Lubrin caused a disturbance that led to Johnson's housing unit being locked down for four days. *Id.* ¶ 113. At the end of lockdown, Johnson swore at Defendant Reeves because Reeves denied some prisoners, including Johnson, their out-of-cell time immediately following the lockdown. *Id.* ¶¶ 117-20. In response, Reeves, Deputy Ruban, and Deputy Dominguez attacked Johnson. *Id.* ¶¶ 121-23. They entered Johnson's cell, handcuffed him, and beat him. *Id.* ¶124. Dominguez then restrained Johnson while Ruban rubbed his crotch against Johnson's buttocks and taunted Johnson. *Id.* ¶ 126. The three correctional officers then brought Johnson to an interview room where they continued to beat him. *Id.* ¶¶ 128-31. About a year later, Johnson learned that the assault had

---

[1] Johnson alleges he was housed in solitary confinement for the first 16 months of his detention (Compl. ¶ 89), but this allegation appears to contradict different allegation that he had a cellmate during or around March of 2015 (*id.* ¶ 123)—about four to five months after his arrest.

been reported to Internal Affairs by an anonymous witness. *Id.* ¶¶ 144-45. Internal Affairs told Johnson that he would be kept away from Ruban, Reeves, and Dominguez. *Id.* ¶¶ 147-48. However, Johnson continued to see them and had to interact with them. *See id.* ¶¶ 149-53.

Johnson eventually went to trial, where he was acquitted of the attempted murder charges but was convicted of misdemeanor possession of cocaine. *Id.* ¶ 197. After his acquittal, Johnson was returned to the jail. *Id.* ¶¶ 206-15. Johnson was told that he would be quarantined for five days—even though he was not ill. *Id.* ¶¶ 208-09. He was released after six hours. *Id.* The jail refused to return Johnson's shoes and suits. *Id.* ¶ 212.

## II. Legal Standard

Federal Rule of Civil Procedure 8 requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). The Court should accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). But, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Court may also disregard "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Where a complaint fails to state a cognizable claim or to allege facts sufficient to support a cognizable claim, it may be dismissed by a Rule 12(b)(6) motion. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

## III. Discussion

### A. Claims Against County Defendants

Johnson originally brought six claims against County Defendants. The first and second claims are for cruel and unusual punishment in violation of the Fourteenth Amendment; County Defendants do not challenge these claims with their motion. Dkt. 42 at 1. Those causes of action shall proceed, and the Court does not presently consider them. Johnson agrees to voluntarily

dismiss with prejudice the fourth, fifth, and sixth causes of action. Dkt. 49 at 1-2. The Court therefore DISMISSES with prejudice those causes of action. Johnson also agreed to dismiss any claims against Defendant Benson without prejudice. *Id.* at 1. The Court DISMISSES all claims against Benson without prejudice. That leaves for consideration only the third cause of action for intentional infliction of emotional distress through a conspiracy of Ruban, Reeves, and Dominguez. Compl. at 39, ¶¶ 240-242.

Johnson and County Defendants agree that California's Government Claims Act requires Johnson to timely file an administrative claim for damages with the relevant public entity before filing suit in court. Compl. ¶¶ 277-78; Dkt. 42 at 8-9, Dkt. 49 at 2; *see* Cal. Govt. Code §§ 911.2, 915, 945.4. The Complaint states: "JOHNSON has complied with all applicable requirements and submitted timely Government Tort Claim Notices pursuant to G.C. 910, et seq., which has been rejected either in writing, or by operation of law, by the COUNTY and CITY." Compl. ¶ 278. This paragraph consists of legal conclusions unsupported by factual allegations. *Iqbal*, 129 S. Ct. at 1950. The California Supreme Court has held that "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement" or the complaint will have failed to state a claim. *State of California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004). Johnson has therefore failed to adequately allege facts supporting his claim to have timely served his administrative claim against County Defendants.

From here, Johnson and County Defendants dispute whether Johnson timely filed his administrative claim with the County, and what facts apply to the cause of action. County Defendants have requested the Court take judicial notice of a claim form on behalf of Johnson against County Defendants. Dkt. 43; Dkt. 44-1. As a duly recorded document, the Court takes judicial notice of the following facts about the document: (1) the claim form is dated July 20, 2018, and (2) on September 12, 2018, Johnson's counsel submitted the claim form to the County Board of Supervisors and represented to the Clerk of the County Board of Supervisors that she had submitted the form to the County Counsel's office on July 20, 2018. Dkt. 44-1 at 1, 23; *Lipsey v. Davey*, 2018 WL 6201947, at *2 (E.D. Cal. Nov. 28, 2018); *see Khoja v. Orexigen Therapeutics,*

Case No.: 5:18-cv-06264-EJD
ORDER GRANTING MOTIONS TO DISMISS
5

*Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018). County Defendants and Johnson dispute whether her July 20, 2018 service of the claim form on the County's counsel was proper.

Assuming that Johnson properly served the claim form on July 20, 2018, the third cause of action—expressly against Ruban, Reeves, and Dominguez—would still be untimely to the extent that it is predicated on their 2015 assault on him in his cell and the interview room. *See* Cal. Govt. Code § 911.2. In his opposition, Johnson concedes that their assault took place outside the limitations period. But he then argues that this cause of action should proceed against unidentified Doe Defendants in connection with the five hours he was held after his acquittal and the jail's failure to return his shoes and clothes. Dkt. 49 at 2. Those events took place less than six months before July 20, 2018. Compl. ¶¶ 206-215. The third cause of action, though, is for "Intentional Infliction of Emotional Distress - Conspiracy between RUBAN, MATTHEW REEVES, and DOMINGUEZ," not against unidentified Doe Defendants. Compl. at 39. "[A] complaint may not be amended by briefs in opposition to a motion to dismiss." *Barbera v. WMC Mortg. Corp.*, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006). Accordingly, the Court DISMISSES the third cause of action for failure to state a claim against Ruban, Reeves, and Dominguez. Having not reached the issue, the Court makes no findings as to whether the claim form was adequately served on July 20, 2018.

**B.      Claims Against City Defendants**

City Defendants move to dismiss the seventh and eighth causes of action for unlawful detention/false imprisonment and malicious prosecution in violation of the Fourth and Fourteenth Amendments because the issues were litigated during his state court criminal proceedings. To plead a malicious prosecution cause of action, a plaintiff must adequately allege that the prior action "(1) was initiated by or at the direction of the defendant and legally terminated in the plaintiff's favor, (2) was brought without probable cause, and (3) was initiated with malice." *Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 740 (2007). To sufficiently allege a claim for false imprisonment under California law, a plaintiff must plead: (1) the nonconsensual, intentional confinement of a person; (2) without lawful privilege; and (3) for an appreciable period of time,

Case No.: 5:18-cv-06264-EJD
ORDER GRANTING MOTIONS TO DISMISS

6

however brief.  *Hernandez v. Cty. of Marin*, 2012 WL 1207231, at *8 (N.D. Cal. Apr. 11, 2012).  To prevail on a section 1983 claim for false imprisonment, a plaintiff must show the police had no probable cause for the initial arrest.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).  Johnson asserts in a footnote that "issues" "remain" as to the effect of Fourth and Fourteenth Amendment jurisprudence on the elements of this theory of liability, but he does not propose, or argue for, any particular elements.

City Defendants argue that the state courts' preliminary hearing and the appeal of the reduction in charges collaterally estop Johnson from bringing these claims.  Dkt. 26 at 9-10, 12.  This Court must give "preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  *Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013).  Under California law, collateral estoppel applies where five factors are met: "(1) the issue sought to be relitigated must be identical to the issue decided in the earlier action; (2) the issue must have been actually litigated and (3) necessarily decided in the earlier action; (4) the earlier decision must be final and made on the merits; and (5) the party against whom issue preclusion is asserted must have been a party to the earlier action or in privity with such a party."  *Id.*

The California Courts of Appeal split on whether a probable cause determination in a preliminary hearing has a preclusive effect on later litigation.  *Patterson v. City of Yuba City*, 884 F.3d 838 (9th Cir. 2018).  City Defendants rely on the Court of Appeal decision *McCutchen v. City of Montclair*, where the court held that a determination at a preliminary hearing "that there was sufficient evidence to hold the plaintiff over for trial may, in some situations, preclude the plaintiff from relitigating the issue of probable cause to arrest in a subsequent civil suit."  73 Cal. App. 4th 1138, 1147 (1999).  Johnson cites to a Court of Appeal case from the Sixth District, *Schmidlin v. City of Palo Alto*, where the court considered the preclusive effect of a suppression hearing.  157 Cal. App. 4th 728 (2007).  The *Schmidlin* Court expressed strong reservations about the preclusive effect of preliminary hearings on subsequent litigation.  *Id.* at 767-68.  After *Schmidlin*, another Court of Appeal agreed with *McCutchen* that a "probable cause determination"

Case No.: 5:18-cv-06264-EJD
ORDER GRANTING MOTIONS TO DISMISS

7

at a preliminary hearing "[is] sufficient to invoke collateral estoppel." *Greene v. Bank of Am.*, 236 Cal. App. 4th 922, 935 (2015), *as modified on denial of reh'g* (May 28, 2015). This Court will follow *McCutchen*'s holding instead of the reasoning in *Schmidlin*, which did not directly involve a preliminary hearing determination of probable cause. *Patterson v. City of Yuba City*, 748 F. App'x 120, 121 n.1 (9th Cir. 2018); *see also Tavakoli v. City of Los Angeles*, 2019 WL 1297950, at *6 n.10 (C.D. Cal. Mar. 18, 2019); *Hoffman v. Gibson*, 2017 WL 3457525, at *3 (S.D. Cal. Aug. 11, 2017); *Beckway v. DeShong*, 717 F. Supp. 2d 908, 919 (N.D. Cal. 2010), *on reconsideration in part* (July 28, 2010).

*McCutchen* does recognize exceptions where collateral estoppel does not apply. The first occurs when additional evidence, not available to the officers at the time of the arrest, is presented at the hearing. *Wige*, 713 F.3d at 1186 (citing *McCutchen*, 73 Cal. App. 4th at 1146). The second is where "the arresting officer lied or fabricated evidence . . . [or] intentional[ly] conceal[ed] exculpatory evidence." *Id.* (citing *McCutchen*, 73 Cal. App. 4th at 1147). Finally, collateral estoppel may not apply where the plaintiff chose for tactical reasons not to litigate probable cause. *McCutchen*, 73 Cal. App. 4th at 1147.

Here, the judge at Johnson's preliminary hearing reduced his charge from attempted murder to assault with a deadly weapon. Compl. ¶ 180. The district attorney appealed the decision, and the appellate court reinstated the charges. *Id.* ¶ 181. Because Johnson must show that City Defendants acts without probable cause as an element of malicious false imprisonment and malicious prosecution, the re-instatement of the attempted murder charges precludes both theories, unless Johnson can plead facts showing that this case fits one of the above exceptions. *See Wige*, 713 F.3d at 1184 ("If [the preliminary hearing probable cause] finding is entitled to preclusive effect, [the plainitff's] § 1983 claims are barred because each claim requires him to prove that defendants lacked probable cause to arrest and prosecute him for that offense."). Johnson argues in his opposition that the tactical-reasons exception should apply here, and he attaches a witness list from the preliminary hearing as an exhibit to his opposition. But the Complaint contains no allegations about the preliminary hearing or the appeal that support this

Case No.: 5:18-cv-06264-EJD
ORDER GRANTING MOTIONS TO DISMISS
8

theory or that show any other exception should apply. The preliminary hearing lasted two days, involved 60 exhibits, and featured 11 witnesses, but the Complaint features allegations as to only one witness and only one type of evidence. Compl. ¶¶ 177-80. Neither is relevant here. The appellate court's decision to re-instate the attempted murder charges receives only two sentences in a 47-page complaint. *Id.* ¶ 181. Johnson has not adequately pleaded facts showing that an exception to *McCutchen* applies. Accordingly, City Defendants' Motion is GRANTED.

### IV. Conclusion

For the reasons discussed above, the Court grants both motions to dismiss. The first and second causes of action may proceed. The fourth, fifth, and sixth causes of action are DISMISSED with prejudice. All claims against Benson are DISMISSED without prejudice. The third, seventh, and eight causes of action are DISMISSED without prejudice. Johnson may file an amended complaint within three weeks of the date of this order.

**IT IS SO ORDERED.**

Dated: April 15, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-06264-EJD
ORDER GRANTING MOTIONS TO DISMISS
9