UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANDREW LEE JOHNSON,

           Plaintiff,

    v.

COUNTY OF SANTA CLARA, et al.,

           Defendants.

Case No. 5:18-cv-06264-EJD

**ORDER RE MOTIONS TO DISMISS**

Re: ECF Nos. 60, 67

      Plaintiff Andrew Lee Johnson has brought suit against the City of San Jose, several police officers in the city police department ("SJPD"), Santa Clara County, and multiple deputies employed by the county for alleged civil rights violations arising from his 2014 arrest, three-year pretrial detention, and eventual acquittal on charges of attempted murder. The Court previously dismissed the original complaint and granted Johnson leave to amend. ECF No. 57. The court now considers two motions to dismiss the First Amended Complaint (the "FAC"). One, filed by the City of San Jose (the "City") and police officers Marco Monzon, Jamie Hall, and Trent Tessler (collectively, "City Defendants") (ECF No. 60), seeks to dismiss Causes of Action Four through Seven. The other, filed by Santa Clara County (the "County") and Deputies Timur Ruban, Matthew Reeves, and Pedro Dominguez (collectively, "County Defendants") (ECF No. 67), seeks dismissal of Causes of Action One, Two, and Nine. Defendant Jereh Lubrin has not responded to the FAC. Johnson has agreed to dismiss the Third Cause of Action. *See* ECF No. 69 at 1. Accordingly, the Court dismisses the Third Cause of Action. For the reasons discussed below, the Court denies the motion brought by the City Defendants, and denies in part and grants in part the motion brought by the County Defendants.

      I.    <u>Judicial Notice</u>

      City Defendants ask the Court to take judicial notice of (1) Johnson's *Trombetta* Motion, (2) the District Attorney's opposition thereto, (3) the trial court's verbal order on the *Trombetta*

Motion, and (4) a July 21, 2017 order by the Sixth Circuit Court of Appeal. ECF No. 61. Courts may take judicial notice of matters that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). It is well-established that "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," so long as the court does not take judicial notice of "disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings. . . . While the court cannot accept the veracity of the representations made in the documents, it may properly take judicial notice of the existence of those documents and of the representations having been made therein." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012) (string citation and quotations omitted). The Court will take judicial notice of the existence of Johnson's *Trombetta* Motion and the trial court's verbal order on the *Trombetta* Motion, and the arguments, analysis, and legal rulings made in those documents. The Court does not take judicial notice of any factual allegations contained in either document. Neither the District Attorney's opposition nor the July 21, 2017 order are relevant to the Court's analysis, so the Court does not take judicial notice of those documents.

II.     Factual Allegations

While returning from a market on the night of October 27, 2014, two brothers, Alvaro and Bicente Castro, accosted Johnson with a knife and attempted to rob him. FAC ¶¶ 25-27. In response, Johnson brandished a firearm that he "always carried with him" and fired two warning shots into the sidewalk. *Id.* ¶¶ 27-29. However, they continued to threaten him, so he shot one in the leg and the other in the hip. *Id.* ¶ 29. Johnson then returned to his apartment. *Id.* ¶ 30. The San Jose Police arrived at the scene within minutes and the Castros were taken to the hospital. *Id.* ¶ 31. There, Defendant Hall interviewed Bicente Castro, recorded the audio of the interview, and took hand-written notes. *Id.* ¶¶ 32-33. Afterwards, Hall uploaded the audio to her work computer terminal and to DCS, the SJPD data management system. *Id.* ¶ 33. She received an email confirming the upload to DCS. *Id.* Relying on her notes, she drafted an interview summary and

United States District Court
Northern District of California

included the summary in the incident report. *Id.* ¶ 34. She then destroyed the notes. *Id.* The audio recording of the interview was subsequently deleted from her recording device, her work computer terminal, and the DCS system. *Id.* ¶¶ 36-38. The recording was never provided to Johnson's criminal defense attorney and Johnson did not learn of its existence until his criminal trial. *Id.* ¶¶ 39-40. Bicente was intoxicated at the time of his interview with a blood alcohol level of twice the legal driving limit. *Id.* ¶ 35. Bicente told Hall that he had trouble remembering the events leading up to the shooting, and he could not account for multiple hours of time. *Id.*

Defendant Monzon interviewed Alvaro Castro, recorded the audio of the interview, and hand wrote notes during the interview. *Id.* ¶¶ 41-42. Monzon, like Hall, used his notes to draft a summary of the interview, which he placed in the incident report, and he uploaded the audio recording to his work computer terminal and DCS. *Id.* ¶¶ 42-43. Monzon destroyed his handwritten notes, and the audio recording was subsequently deleted from his recording device, his work computer terminal, and DCS. *Id.* ¶¶ 43, 50-52. Johnson never received a copy of the recording and did not learn of its existence until his trial. *Id.* ¶¶ 53-54. Alvaro was intoxicated at the time of his interview and was suffering from alcohol poisoning while at the hospital. *Id.* ¶ 49. Alvaro told Monzon that he had trouble remembering the events before the shooting. *Id.* ¶ 48. At the hospital, Alvaro told medical staff that he and Bicente were victims of a drive-by shooting and the staff relayed his statements to Monzon. *Id.* ¶¶ 44-46. Monzon's report included neither Alvaro's statements about the drive-by shooting nor Alvaro's level of intoxication. *Id.* ¶¶ 47, 49.

Monzon also interviewed the manager of a market near location of the shooting. *Id.* ¶ 57. The manager showed Monzon video camera footage of Alvaro forcing his way behind the counter about 15 minutes before the shooting and of Johnson making a purchase there earlier in the day. *Id.* ¶ 58. Monzon preserved the footage of Johnson making a purchase, but not the footage of Alvaro. *Id.* ¶ 59. Defendant Tessler separately interviewed a clerk who works at the market. *Id.* ¶ 71. The clerk told Tessler that the Castro brothers had caused a disturbance in the store shortly before the shooting, arguing with other customers and accusing the clerk of calling the police. *Id.* ¶¶ 71-72. The clerk said that Alvaro tried to force his way behind the county of the store. *Id.* ¶

73. The clerk also told Tessler that he believed the Castros were looking for trouble, so he locked the front door and closed the market after they left. *Id.* ¶ 74.

Tessler also interviewed the property manager of Johnson's building. *Id.* ¶ 66. The property manager provided Tessler with a thumb drive containing data from the key fob Johnson used to enter the building. *Id.* Neither the thumb drive nor the raw data were provided to Johnson; instead Johnson received a document of his entrances and exits. *Id.* ¶ 67. He later learned that Tessler had created the document, and Johnson alleges that City Defendants and unknown Doe Defendants altered the data represented in the document. *Id.* ¶¶ 67-68. Johnson did not learn of the existence of the raw data until property manager testified at trial. *Id.* ¶ 68.

On November 12, 2014, Johnson was booked into the county jail on two counts of attempted premeditated murder and on one count of misdemeanor possession of cocaine. *Id.* ¶ 87. He would not be released until February 7, 2018, following his acquittal on the attempted murder charges. *Id.* ¶ 252. Johnson chose not to post bail so that he could afford to retain private counsel. *Id.* ¶ 188. Johnson alleges that he was subject to abuse and other inhumane treatment while detained. *See id.* ¶¶ 87-185. He alleges that he was denied psychiatric prescription medication for multiple weeks on at least two occasions. *Id.* ¶¶ 89-92, 111-12. He alleges that he was confined to solitary confinement for his first 16 months of detention (*id.* ¶ 91, 103), however, he also alleges that in March 2015, four months after his detention began, he had a cellmate (*id.* ¶¶ 127, 137).

In March 2015, Defendants Reeves, Ruban, and Dominguez abused Johnson following a disturbance caused by Defendant Lubrin. *Id.* ¶¶ 127-49. The disturbance led to unrest in the jail population and then a four-day lockdown, when inmates in the unit were not allowed to leave their cells. *Id.* ¶ 127. When the lockdown ended, about a quarter of the housing unit including Johnson, were permitted out of their cells, which led to a verbal altercation between Johnson and Reeves. *Id.* ¶¶ 130-34. Reeves, Ruban, and Dominguez then entered Johnson's cell where they handcuffed Johnson and began kicking and punching him. *Id.* ¶¶ 136-38. At one point, Dominguez restrained Johnson, while Ruban ground his crotch against Johnson's buttocks. *Id.* ¶

140. The three deputies then brought Johnson to an interview room where they continued to beat him, slamming him against the wall, punching him, and stomping on his feet. *Id.* ¶¶ 143-46. About a year after the beating, Johnson told Internal Affairs investigators about the beating, and he was told that Reeves, Ruban, and Dominguez would be kept away from him. *Id.* ¶¶ 158-61. However, he was forced to interact with them on multiple occasions after that. *Id.* ¶¶ 162-67.

At Johnson's preliminary hearing on March 4, 2016, the trial court found that the evidence was insufficient to sustain the attempted murder charges and reduced the charges to assault with a deadly weapon with great bodily injury. *Id.* ¶¶ 193-95. The District Attorney's office appealed, the Court of Appeal issued an Alternative Writ of Mandate, and the trial court reinstated the attempted homicide charge. *Id.* ¶¶ 199-203.

After jury selection, Johnson filed a *Trombetta* Motion based on the lost audio recordings. Klimczak Ex. A. Johnson sought dismissal of the charges, or alternatively for an instruction to the jury to draw any inferences regarding the lost evidence in Johnson's favor and for Johnson be allowed to cross-examine SJPD witnesses as to how the investigation was handled. *Id.* at 3. The trial judge declined to dismiss the charges stating, "what I do not hear is evidence of bad faith, that some officer – based on his or her knowledge of the case – subverted evidence, destroyed evidence of these things. . . . So for that reason, I do not believe that dismissal is appropriate." Klimczak Ex. E at 103:10-12, 20-21. The trial judge ruled that Johnson would be permitted to cross-examine the complaining witnesses and SJPD witnesses. *Id.* at 104:8-11; FAC ¶ 211. Finally, the trial judge took "under submission" Johnson's request for jury instructions adverse to the prosecution, stating that they would "keep that issue open for [Johnson]" and that they would "allow you to argue [for an adverse jury instruction] after the evidence comes in if [Johnson] believe[s] that it is still appropriate." *Id.* at 104:15-26; FAC ¶ 211. Johnson does not allege that the trial court issued an adverse jury instruction.

After three weeks of evidence, the jury acquitted Johnson. FAC ¶¶ 218-20. Following his acquittal, Johnson was transported back to jail and returned to his cell. *Id.* ¶ 229. Despite not being sick, he was told by unknown Doe Defendants that he might be quarantined in the jail for

five days.  *Id.* ¶ 230.  He was held for six hours before being released.  *Id.* ¶ 231.  Jail personnel refused to return his clothes and shoes upon his release.  *Id.* ¶ 235.

III.     Legal Standard

Federal Rule of Civil Procedure 8 requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The Court should accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  But, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  The Court may also disregard "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Where a complaint fails to state a cognizable claim or to allege facts sufficient to support a cognizable claim, it may be dismissed by a Rule 12(b)(6) motion.  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

IV.     City Defendants' Motion to Dismiss

Johnson brings the following causes of action against the City Defendants:  Deliberate Fabrication of Evidence against Tessler, Monzon, and Hall (Fourth Cause of Action); Failure to Disclose Exculpatory or Impeachment Evidence against Tessler, Monzon, and Hall (Fifth Cause of Action); Conspiracy against Tessler, Monzon, and Hall (Sixth Cause of Action); Continued Unlawful Detention and Malicious Prosecution under the Fourth and Fourteenth Amendments though 42 U.S.C. § 1983 against Tessler, Monzon, Hall, and unknown Doe Defendants (Seventh Cause of Action); and Unlawful Detention and Malicious Prosecution under the Fourth and Fourteenth Amendments though *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City (Eighth Cause of Action).  City Defendants argue that these causes of action are predicated on the same factual allegations that supported the causes of action for malicious prosecution, destruction/fabrication of evidence, and false imprisonment brought in the original

complaint. Accordingly, they contend that Johnson must still satisfy the lack-of-probable-cause element for the original causes of action, which he cannot do because, under *McCutchen v. City of Montclair*, 73 Cal. App. 4th 1138 (1999), the trial court's reinstatement of the attempted homicide charges establishes through collateral estoppel that City Defendants had sufficient probable cause to arrest and hold him. Johnson counters that the causes of action in the FAC are different from those in the original complaint, so collateral estoppel does not apply.

The Court need not consider whether it should treat the causes of action in the FAC as the same causes of action from the original complaint, because, assuming they are the same, City Defendants' argument based on *McCutchen* would fail. In *McCutchen*, the California Court of Appeal held that where a trial court determines in a preliminary hearing that "there was sufficient evidence to hold the plaintiff over for trial may, in some situations, preclude the plaintiff from relitigating the issue of probable cause to arrest in a subsequent civil suit." *Id.* at 1147. The Court of Appeal recognized three exceptions: where new evidence is presented at the preliminary hearing, when the investigating officers fabricated or suppressed evidence, or where the criminal defendants chose for tactical reasons not to litigate probable cause. *Id.* at 1147. Here, Johnson alleges that Defendants suppressed and fabricated evidence and hid their conduct from him until trial. *See, e.g.*, FAC ¶¶ 34-40, 43, 50-54, 66-68.

City Defendants argue that the trial judge's ruling on Johnson's *Trombetta* Motion collaterally estops Johnson from claiming that they destroyed or suppressed evidence. Under California law, collateral estoppel applies when five requirements are met "(1) the issue sought to be relitigated must be identical to the issue decided in the earlier action; (2) the issue must have been actually litigated and (3) necessarily decided in the earlier action; (4) the earlier decision must be final and made on the merits; and (5) the party against whom issue preclusion is asserted must have been a party to the earlier action or in privity with such a party." *Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013). "Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action." *Daar & Newman v. VRL Int'l*, 28 Cal. Rptr. 3d 566, 571 (2005). "A

party who asserts claim or issue preclusion as a bar to further litigation bears the burden of proving that the requirements of the doctrine are satisfied." *Hong Sang Mkt., Inc. v. Peng*, 229 Cal. Rptr. 3d 99, 110 (Ct. App. 2018).

The trial court's ruling on the *Trombetta* Motion does not meet the "final and on the merits" requirement. First, the California Supreme Court has held that "a finding made in connection with a cause of action should not have preclusive effect when the finding was adverse to the party that prevailed on that cause of action, in part because the party could not appeal." *Samara v. Matar*, 419 P.3d 924, 931 (2018) (citing and describing *Albertson v. Raboff*, 295 P.2d 405 (1956)). Johnson did not have the opportunity to appeal the trial court's decision not to dismiss the charges based on the *Trombetta* Motion because he was acquitted. Second, while the trial court found that Johnson had not shown bad faith by the officers such that dismissal was warranted, it allowed Johnson to cross examine SJPD witnesses as to their credibility and did not issue a decision on Johnson's request for an adverse jury instruction. City Defendants argue that this Court should interpret the fact that the trial court ultimately did not issue an adverse jury instruction as a full denial of the *Trombetta* Motion, but that assumption would go too far given the totality of the trial court's order. *Cf. Samara*, 419 P.3d at 930. The trial court's order on the *Trombetta* Motion does not preclude Johnson from alleging City Defendants suppressed or fabricated evidence. City Defendants' argument that *McCutchen* bars Johnson from bringing Causes of Action Four through Seven therefore fails. Likewise, City Defendants' argument that the City is not subject to *Monell* liability because the underlying claims are barred also fails. City Defendants' motion is denied.

## V. County Defendants' Motion to Dismiss

Against County Defendants, Johnson brings section 1983 claims for Cruel and Unusual Confinement under the Fourteenth Amendment against Reeves, Ruban, and Dominguez[1] (Cause of Action One), for Cruel and Unusual Confinement under the Fourteenth Amendment against the

---

[1] This Cause of Action is also raised against Defendant Lubrin, but because he is not party to this Motion, the Court does not discuss him.

County (Cause of Action Two), and for Intentional Infliction of Emotional Distress against unknown Doe Defendants employed by the County and the County (Cause of Action Nine). The County argues that the First and Second Causes of Action are barred by the statute of limitations and that the Ninth Cause of Action should be dismissed because the alleged conduct does not meet the standards for extreme or outrageous conduct and because Johnson failed to comply with state presentation requirements.

a. Causes of Action One and Two

The First and Second Causes of Action arise from Johnson's alleged mistreatment in jail and the alleged abuse by Reeves, Ruban, and Dominguez. In the Ninth Circuit, "[a] motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995). A 12(b)(6) motion "must be denied if the factual and legal issues are not sufficiently clear to permit a determination with certainty whether the action was timely." *Baros v. Ramirez*, 2019 WL 3849171, at *5 (C.D. Cal. June 5, 2019), *report and recommendation adopted*, 2019 WL 3841797 (C.D. Cal. Aug. 12, 2019) (quoting *Halbert v. Cty. of San Diego*, 2009 WL 1024577, at *3 (S.D. Cal. Apr. 15, 2009) (citing *Supermail*, 68 F.3d at 1207)).

42 U.S.C. § 1983 does not contain a statute of limitations. Rather, the applicable limitations period matches the limitations period for personal injury actions in the forum state. *Shaw v. Sacramento Cty. Sheriff's Dep't*, 343 F. Supp. 3d 919, 922 (E.D. Cal. 2018). In California, that is two years. Cal. Code Civ. Proc. § 335.1. Federal law determines when a cause of action accrues and, therefore, when the statute of limitations begins to run in a section 1983 action. *Baros*, 2019 WL 3849171, at *6 (C.D. Cal. June 5, 2019) (citing *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002)). Section 352.1 of the California Code of Civil Procedure tolls the statute of limitations for two years where the plaintiff is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. Proc. Code §

United States District Court
Northern District of California

352.1(a).

Some dispute among the authorities exists as to whether section 352.1 applies to pretrial detainees in county jails. The Ninth Circuit considered the predecessor statute to section 352.1 in *Elliott v. City of Union City*, 25 F.3d 800 (9th Cir. 1994). There, the plaintiff was arrested and remained in continuous custody until he was convicted. *Id.* at 801. He brought a section 1983 claim against his arresting police officers for excessive force. *Id.* The Ninth Circuit reasoned "[a] person held in police custody prior to arraignment is faced with the same limitations as someone in custody after arraignment," thus drawing a distinction between them would be "arbitrary." *Id.* at 803. The Circuit Court held that "actual, uninterrupted incarceration is the touchstone for assessing tolling" under the section 352.1's predecessor statute and found that the statute of limitations had been tolled for that plaintiff. *Id.* (quotation and citation omitted). More recently, the Second Circuit of the California Court of Appeal found that section 352.1 does not apply to individuals held in county jail prior to trial. *Austin v. Medicis*, 230 Cal. Rptr. 3d 528, 531 (Ct. App. 2018), *reh'g denied* (Apr. 11, 2018), *review denied* (June 13, 2018). There, the plaintiff's cause of action accrued while he was in county jail, where he was held for about a year and a half. *Id.* at 537. As a matter of first impression, the Court of Appeal analyzed the legislative history of Section 352.1. *Id.* at 537-42. Based on that history, it held that "a would-be plaintiff is 'imprisoned on a criminal charge' within the meaning of section 352.1 if he or she is serving a term of imprisonment in the state prison," and that the statute does not toll the statute of limitations for "local inmates in pretrial custody." *Id.* at 542.

Here, County Defendants argue that under *Austin*, the statute of limitations for Johnson's section 1983 claims was not tolled, so any alleged conduct that occurred more than two years before he filed the complaint—*i.e.*, any alleged conduct that occurred prior to October 12, 2016— cannot support those causes of action claims. The Court disagrees. While the *Austin* Court found that *Elliot* was "unpersuasive" (*id.* at 537 n.5), *Elliot* remains binding on this Court. The facts in *Elliot* are not distinguishable from the facts here. Like the *Elliot* plaintiff, Johnson was arrested and held in continuous confinement, and his causes of action accrued before his trial. *Elliot*, 25

United States District Court
Northern District of California

F.3d at 801. While the *Elliot* decision turned on the predecessor statute to section 352.1, the only difference between the two statutes is that that section 352.1 set a two-year maximum to the tolling period; the revision did not change to whom the statute applies. *See Baros*, 2019 WL 3849171, at *6 (citing *Bullette v. Cty. of Riverside*, 2011 WL 4387762 (C.D. Cal. July 20, 2011)). So, *Elliot* is on point, and "caselaw on point is the law." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). "A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue." *Id.* "[U]nless and until [*Elliot* is] overruled by a body competent to do so," this Court must follow its holding that that the relevant inquiry is whether the plaintiff has been in continuous custody, not whether the plaintiff's detention is before or after their trial. *Id; see also Miller v Najera*, 2020 WL 731176, at *8 (E.D. Cal. Feb. 13, 2020) ("[W]hile the *Austin* decision applies to Plaintiff's state law claim, this Court must apply the principles of the *Elliott* decision to Plaintiff's federal claims unless and until the Ninth Circuit holds otherwise."); *Baros*, 2019 WL 3849171, at *6. The cases cited by County Defendants are distinguishable from *Elliot* on their facts. *Garcia v. Corral*, 2019 WL 931754, at *3 (N.D. Cal. Feb. 26, 2019) (finding that "[e]ven . . . *Elliott* is applicable, the facts of this case are distinguishable" because the plaintiff was in and out of custody); *Shaw*, 343 F. Supp. 3d at 924 (E.D. Cal. 2018) ("*Elliott* is factually distinguishable from the instant case because Plaintiff spent one night in county jail while the plaintiff in *Elliott* remained in uninterrupted custody from the time of his arrest until he was convicted and sent to state prison.").

Because *Elliot* controls, the court will apply the two-year tolling of section 352.1. Thus, Johnson's claims, which are all predicated on events that allegedly took place after he was booked into jail on November 12, 2014, are timely. County Defendants' motion to dismiss is denied as to the First and Second Causes of Action.

### b. Cause of Action Nine

The Ninth Cause of Action for intentional infliction of emotional distress seeks to hold the County liable through *respondeat superior* for Doe Defendants' alleged statement following his acquittal that Johnson "might" be subject to a five-day quarantine in jail and their alleged refusal

to return his clothes when he was released. FAC ¶ 308. Before a plaintiff can seek money damages from a government entity or its employees on a tort claim, California's Government Tort Claims Act requires the plaintiff to file an administrative claim form with the relevant government entity no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905, 911.2, 945.4, 950-950; *Lipsey v. Davey*, 2018 WL 6201947, at *2 (E.D. Cal. Nov. 28, 2018). "Timely claim presentation is not merely a procedural requirement, but is a condition precedent to plaintiff's maintaining an action against defendant, and thus an element of the plaintiff's cause of action." *A.M. v. Ventura Unified Sch. Dist.*, 208 Cal. Rptr. 3d 234, 238 (Ct. App. 2016), *as modified* (Oct. 19, 2016) (citations, quotations, and alterations omitted). The California Supreme Court has held that "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement" or the complaint will have failed to state a claim. *State of California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004).

The parties dispute whether Johnson complied with the statute's presentation requirement. The Act required Johnson to deliver or mail his claim to the clerk, secretary, auditor, or to the governing body at its principal office. Cal. Gov't Code § 915(a). Johnson, though, does not plead any facts showing that he delivered the claim to the proper government entity. Rather the FAC merely states: "JOHNSON has complied with all applicable requirements by submitting timely Government Tort Claim Notices pursuant to G.C. 910, et seq., on July 20, 2018, which have been rejected either in writing, or by operation of law, by the COUNTY and CITY." FAC ¶ 313. That Johnson "complied with all applicable requirements" is a legal conclusion, not a factual allegation. *See Iqbal*, 129 S. Ct. at 1950; *see also* ECF No. 57 at 5. In his opposition, Johnson refers the court to the earlier declaration his counsel filed in connection with his opposition to County Defendants' motion to dismiss the original complaint. *See* ECF No. 69 at 13-14 (citing ECF No. 49-1). But none of the "summarized" "facts" listed in the opposition or counsel's declaration are pled in the FAC. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019) (quoting *Merritt v. Metro. Life Ins. Co.*, 2010 WL 725073, at *1 (N.D. Cal. Mar.

1, 2010)).  "[T]he Court does not consider what Plaintiff intended to allege, but rather, considers what is alleged." *Id.*  This pleading failure is grounds to dismiss the Ninth Cause of Action.

The Court denies leave to amend for two reasons.  First, in his original complaint, Johnson represented that he had complied with the statute with a paragraph that was nearly identical to the paragraph quoted above.  The only difference is that in the FAC Johnson added the date that he purportedly submitted the claim form.  *Compare* ECF No. 1 ¶ 278 *with* FAC ¶ 313.  In its order dismissing the original complaint, the Court held, "This paragraph consists of legal conclusions unsupported by factual allegations. . . .  Johnson has therefore failed to adequately allege facts supporting his claim to have timely served his administrative claim against County Defendants." ECF No. 57 at 5.  Despite having the chance to amend, Johnson chose not to add any factual allegations showing that he submitted the claim to the proper entity.  Second, even if Johnson had pled the factual allegations of his counsel's declaration into the FAC, those allegations would not support his claim.  Counsel represented that she timely submitted the claim to the County Counsel, not the Clerk for the County Board of Supervisors.  ECF No. 49-1 ¶ 7.  The California Supreme Court has held that a plaintiff may not "plac[e] a duty on a public employee who receives a misdirected claim to forward it to the proper agency."  *DiCampli-Mintz v. Cty. of Santa Clara*, 289 P.3d 884, 892 (2012).  By submitting the claim to the County Counsel, Johnson "improperly shifted the responsibility for presenting a claim from" himself to the County Counsel.  *Id.* Therefore, any amendment that Johnson could make would be futile.  Leave to amend is denied.

VI.     Conclusion

For the reasons discussed above, the motion filed by City Defendants is denied.  County Defendants' motion is denied as to the First and Second Causes of Action and granted with prejudice on the Ninth Cause of Action.

**IT IS SO ORDERED.**

Dated: February 21, 2020

EDWARD J. DAVILA
United States District Judge