UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANDREW LEE JOHNSON,

Plaintiff,

v.

COUNTY OF SANTA CLARA, et al.,

Defendants.

Case No.   5:18-cv-06264-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 132, 136, 164, 211

In this action, Plaintiff Andrew Lee Johnson asserts that the several Defendants violated his constitutional rights during his arrest in 2014, his subsequent three years' pre-trial detention, and the trial where he was eventually acquitted of the charges for attempted murder.

Three groups of defendants have moved for summary judgment on all claims against them. Defendants City of San Jose ("City") and Officers Marco Monzon, Jamie Lee Nicholas Hall, and Trent Tessler ("Officers," collectively with City, "City Defendants") move for summary judgment on five claims arising from the investigation leading to Plaintiff's arrest, the alleged destruction of evidence, and his subsequent detention. Mot. Summ. J. ("City Mot.") 11–12, ECF No. 132. Defendant County of Santa Clara ("County") moves for summary judgment on the *Monell* municipal liability claim relating to Plaintiff's detention at the County's facility. Mot. Partial Summ. J. ("County Mot.") 1, ECF No. 136. Finally, Defendant Jereh Lubrin—a deputy at the Santa Clara County Main Jail—seeks summary judgment on the one claim against him for cruel and unusual condition of confinement. Mem. Points Authorities ("Lubrin Mot.") 3, ECF No. 164.

On January 21, 2022, the Court took all three motions under submission without oral argument. ECF No. 187. Having reviewed the briefs, the statements of undisputed facts, and

statements of recent decisions, the Court GRANTS IN PART and DENIES IN PART the Motions.

## I.      BACKGROUND

### A.      Plaintiff's Shooting Incident

Near midnight on October 27, 2014, Plaintiff was returning home from the Bonfare Market near his apartment when he was approached on the sidewalk by two brothers, Alvaro and Bicente Castro.  City Mot. 3; Wesley Klimczak Decl. ("Klimczak Decl."), Ex. I ("Johnson Dep.") 185:7–16.  Plaintiff put up his hands "in a surrendering motion" with his back to traffic.  Johnson Dep. 185:22–186:5.  When the two brothers continued to harass him, Plaintiff attempted to deescalate by taking out the pistol he was carrying and firing two warning shots into the sidewalk.  *Id.* 186:8–11.  After he fired, one of the Castros attempted to attack Plaintiff with a knife, and Plaintiff responded by shooting one in the hip and the other in the leg.  *Id.* 187:3–6.  After he disabled both men, Plaintiff returned home to his apartment nearby.  *Id.* 187:7–9.

### B.      City Defendants' Investigation and Preliminary Hearing

#### 1.      Defendant Officer Monzon

On October 27, 2014, Officer Monzon arrived at the scene of the shooting and followed the ambulance that transported Alvaro Castro to the hospital.  Klimczak Decl., Ex. A ("Trial Tr.") 854:19–856:7; *see also* Defs.' Reply re Separate Statement of Undisputed Material Facts ("City UMF"), Fact 3, ECF No. 180.  At the hospital, Officer Monzon obtained a recorded statement from Alvaro Castro, took photographs, and handwrote notes.  Trial Tr. 856:4–7; 884:25–28.  Once he had returned to the San Jose Police Department ("SJPD"), Officer Monzon attempted to upload the photographs and audio recording of Alvaro's interview onto the SJPD's Digital Crime Scene ("DCS") system, though the audio recording was unable to be located later.  Trial Tr. 883:9–15; City UMF, Fact 4.  He also used his handwritten notes to write a report.  *Id.* 269:14–24.  Officer Monzon then deleted the recording from his recording device and discarded the notes he took from the interview.  *Id.* 884:5–17.

#### 2.      Defendant Officer Hall

Like Officer Monzon, Officer Hall had also arrived at the scene of the crime and followed

United States District Court
Northern District of California

the ambulance that took Bicente Castro to the hospital. City UMF, Fact 10. At the hospital, Officer Hall first attempted to interview Bicente in the emergency room but was unable because Bicente was "hysterical" with several doctors working on him. Trial Tr. 693:20–694:24. Officer Hall was only able to interview Bicente after the doctors moved him to a different room for a full body CAT scan. Trial Tr. 695:2–5. Officer Hall recorded the interview with an audio recorder, took notes, and took photographs of Bicente's injuries. *Id.* 701:18–24.

After he returned to the SJPD station, Officer Hall uploaded the audio recordings and photographs to the DCS. *Id.* 703:21–704:1. He also shredded his handwritten notes after writing his report, as he had been trained to do. *Id.* 705:21–706:2. However, when Officer Hall searched the DCS for the recordings prior to Plaintiff's criminal trial, the audio file of Bicente's interview was gone, though the photographs and the audio recording of Bicente's doctor were still present. *Id.* 704:9–21.

### 3.     Defendant Officer Tessler

Officer Tessler—then a detective—was tasked with obtaining additional information and conducting follow-up interviews relating to the Castro shooting. City UMF, Fact 15. After reviewing Alvaro Castro's initial statement to Officer Monzon, Officer Tessler interviewed Alvaro Castro three more times because he wanted additional information to explain a gap in time in Alvaro's initial statement. *Id.*; *see also* Trial Tr. 1247:13–15.

Additionally, Officer Tessler interviewed the property manager of the apartment complex where Plaintiff resided and learned that residents access the complex using a key fob. City UMF, Fact 21. The property manager provided a thumb drive to Officer Tessler with Excel spreadsheets containing information associated with Plaintiff's key fob. City UMF, Fact 22. Officer Tessler testified that this raw data was later "shrunk down" but that the data was not changed. Tessler Dep. 92:10–14. He also testified that he "condensed" the spreadsheet data down to the relevant gates' data. *Id.* 93:15–21. Plaintiff, however, testified that the spreadsheet prepared by Officer Tessler did not reflect his personal recollections of his comings and goings on the relevant dates. Johnson Dep. 204:22–25.

United States District Court
Northern District of California

### 4.      Plaintiff's Arrest and Preliminary Hearing

On November 12, 2014, Plaintiff was arrested and interrogated by Officers Tessler and Ericksen.  City UMF, Fact 26.

Plaintiff's preliminary hearing was held on February 16, 2015.  Klimczak Decl., Ex. B. Initially, the criminal trial court found sufficient evidence of assault with a deadly weapon but no evidence of express malice for attempted murder.  *See* Klimczak Decl., Ex. B, at 352:13–354:27. However, the appellate court reversed the decision, and the trial court reinstated the attempted murder charges.  City UMF, Fact 21; City Mot. 6.

Plaintiff does not dispute that the criminal court found probable cause to hold him over for trial on two counts of attempted murder and two counts of aggravated assault.  City UMF, Fact 27.

### C.      County Defendant's Customs and Policies

Following his arrest, Plaintiff was in the County's custody for over three years, from November 12, 2014 to February 7, 2018.  FAC ¶¶ 87, 252.  Because the County only moves for summary judgment on Plaintiff's *Monell* claim for municipal liability, the Court only recites the facts relevant to this claim, specifically the County's policies, customs, or practices during Plaintiff's detention.

### 1.      Excessive Force Policies

The County maintains a Use of Force and Restraints Policy that permits officers to only use the amount of force necessary to bring an incident under control, requires officers to attempt voluntary compliance before using force, and prohibits the use of force or restraints for discipline. Decl. David Sepulveda ("Sepulveda Decl.") ¶ 3, Ex. 1 ("Force Policy"); *see also* County's Reply Separate Statement ("County UMF"), Fact 1.

The County's Sheriff Correctional Deputies are required to attend the Santa Clara County Correctional Academy, consisting of over 400 hours of training, twenty-four (24) weeks of the Jail Training Program, and an annual twenty-four (24) hours' in-service and continuing education. County UMF, Fact 2; *see also* County Mot. 2–3.  This training involves the use of force, defensive tactics, restraint techniques, and drafting reports.  *Id.*  The County's training has historically

United States District Court
Northern District of California

involved more hours than the California minimum requirement.  Decl. Adam Oberdorfer ("Oberdorfer Decl.") ¶ 5.

The County also maintains an Internal Affairs Unit ("IAU") to "receive, record, and investigate all complaints alleging misconduct on the part of Department [of Correction] personnel."  Sepulveda Decl., Ex. 2 ("IA Policy"), at 1.19-1; County UMF, Fact 4.  The IA Policy provides for a formal investigation involving preliminary inquiries, records review, witness and employee interviews, resulting in a final investigative report with findings.  IA Policy 1.19-4–1.19-9.  The investigation must be completed within one year of the misconduct's discovery, with major violations resulting in disciplinary actions that may include termination.  *Id.* 1.19-9–1.19-20.  Plaintiff only disputes that certain IAU officers required a higher standard of proof for certain findings and did not inquire into officers' prior allegations of misconduct.  County UMF, Fact 4.

In 2015, the County's Board of Supervisors established a "Blue Ribbon Commission" to reform the Custody Bureau's use of force, which resulted in a report presented to the Santa Clara Board of Supervisors in April 2016.  Decl. Robert Powell ("Powell Decl."), Ex. T ("County Audit"), at 31; Johnson County Decl. ¶ 20.  The Blue Ribbon Commission resulted in 629 jail reform recommendations, and the Custody Bureau implemented a new use of force policy in August 2017.  *Id.*

### 2. Use of Force Against Plaintiff

On March 29, 2016, the IAU lodged an investigation into Plaintiff's allegations of force and abuse against Deputies Ruban, Reeves, and Dominguez for beating him after he insulted one of the deputies.  County UMF, Fact 5; FAC ¶¶ 133–146.

The IAU concluded that the allegations were unfounded and notified the County's Major Crimes Unit for further investigation.  The Major Crimes Unit then submitted its investigation report to the District Attorney's Office, which declined to file any charges against the deputies.  Sepulveda Decl. ¶ 5; County UMF, Facts 5–6.

### 3. Instances of Excessive Force

<u>David Grandara</u>:  On July 20, 2015, Grandara filed an Inmate Grievance Form that

Case No.: 5:18-cv-06264-EJD
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

deputies used excessive force.  The County investigated the allegations and determined that the use of force was justified, and Grandara did not file a lawsuit against the County.  County UMF, Fact 14.

Michael Tyree:  In August 2015, three deputies murdered Michael Tyree, a mentally ill inmate at the County jail, just below Plaintiff's cell.  FAC ¶ 156.  In October 2015, the County retained an outside law firm to investigate Tyree's murder and whether Deputies Matthew Farris, Rafael Rodriguez, and Defendant Lubrin violated County policies.  The investigation concluded that all three officers violated County policies, the County terminated all three deputies, and the District Attorney criminally prosecuted all three officers, resulting in convictions for second-degree murder.  Sepulveda Decl. ¶ 6; County UMF, Fact 8.

Adrian Villalon:  On November 2, 2015, Villalon submitted a grievance alleging excessive force.  The County's shift lieutenant, facility commander, and supervising sergeant investigated the incident and concluded that the force used was necessary and appropriate.  Villalon did not file a lawsuit against the County.  Sepulveda Decl. ¶ 12.

Rikki Martinez:  Martinez lodged a use of force complaint against Deputy Jacquez.  On April 15, 2017, IAU issued findings that either exonerated or declined to sustain the policy violations against Deputy Jacquez.  The County subsequent settled the resultant excessive force lawsuit brought by Martinez.  Sepulveda Decl. ¶ 7; County UMF, Facts 9–10.

Aaron Steward:  On July 13, 2017, Steward's father informed IAU that Deputy West had kicked Steward multiple times, causing injuries.  On April 4, 2019, IAU issued findings declining to sustain any of the eight potential policy violations.  The Major Crimes Unit also investigated Deputy West's conduct and forwarded the report to the District Attorney, who found that Deputy West was entitled to use the force he did and declined to file any charges.  Sepulveda Decl. ¶¶ 8–9; County UMF, Facts 11–13.  Plaintiff claims that the investigator who referred the case to the District Attorney had omitted material information and mischaracterized witness statements.  County UMF, Facts 11–12.

Jesse Grant:  On September 13, 2017, Grant filed a claim alleging excessive force.  The

County rejected his claim on October 19, 2017, and Grant did not proceed with an excessive force lawsuit against the County.  Sepulveda Decl. ¶ 13; County UMF, Fact 18.

Other Complainants:  Ruben Garcia, Leopoldo Manzo, Walter Roches, Daniel Reyes, and Julian Vasquez-Bernabe had brought separate lawsuits against the County.  All suits were settled without any admissions from the County.  None of the individual County Deputy Defendants were named in any of these cases.  Sepulveda Decl. ¶ 11; County UMF, Fact 15.

### 4. Housing Conditions

The parties dispute whether Plaintiff received the minimum out-of-cell time pursuant to the standards for local detention facilities.  *See* County UMF, Facts 22–36 (indicating disputes on all facts).  Plaintiff states that he was locked in his cell for 47 out of 48 hours regularly, spent 16 months in solitary confinement, and received only 15 minutes of out-of-cell time each day.  Johnson Decl. ¶¶ 27–36.

Plaintiff does not identify any other instances where inmates received unconstitutional housing treatment.  Instead, he cites the County's classification process and his own classification records as evidence of a "custom of housing people in solitary confinement due to their charges only."  Opp. County 22.

### D. Officer Lubrin's Conduct

For a period of six months, Deputy Jereh Lubrin was assigned to Plaintiff's floor during his detention at the Santa Clara County Main Jail.  Plaintiff's Separate Statement of Facts ("Lubrin UMF"), Fact 9.  Plaintiff was Lubrin's trustee for those six months.  Lubrin UMF, Fact 21.

During this period, there was one exchange where Lubrin searched Plaintiff's cell for contraband, verbally harassed him, and threatened to "do butthole checks on all the blacks."  Lubrin UMF, Facts 23–24; *see also* Johnson Dep. 111:15–114:8, ECF No. 163-1.  Lubrin also intentionally caused a disturbance in Plaintiff's housing unit, which resulted in the entire pod being locked down for four days.  Lubrin UMF, Fact 27.  Plaintiff does not allege that Lubrin subjected him to any excessive force.  Lubrin UMF, Facts 31, 34.

United States District Court
Northern District of California

### E.    Trial Proceedings and Acquittal

Before Plaintiff's criminal trial began, his counsel filed a *Trombetta* motion seeking dismissal or sanctions, based on allegations that the SJPD had intentionally destroyed and fabricated evidence.  City UMF, Fact 30.  The purported destruction at issue were the losses of Officers Monzon's and Hall's recorded interviews with the two Castro brothers on the night of the shooting.  Klimczak Decl., Ex. D, ECF No. 60-2.  Additionally, the *Trombetta* motion claimed that Officer Monzon failed to properly execute a search warrant and that Officer Hall intentionally failed to preserve surveillance footage.  *Id.*  The criminal court denied Plaintiff's motion.  City UMF, Fact 31.  It found that, although the loss of both interview recordings was "evidence of human error, inattentiveness to detail, possibly even sloppy work, and more than likely an inadequate system," there was insufficient evidence of the bad faith required to grant the *Trombetta* motion.  ECF No. 60-2, at 138.

At trial, the prosecution called Officers Monzon, Hall, and Tessler to testify, and Plaintiff's defense counsel cross-examined all three officers.  City UMF, Fact 32.  At the close of the prosecution's case, Plaintiff moved to dismiss the attempted murder charges based on insufficient evidence.  City UMF, Fact 33.  In doing so, Plaintiff's defense counsel conceded that "if [the jurors] choose to ignore [Plaintiff's] testimony, they could find him guilty of the [aggravated assault] charges."  Trial Tr. 1420:15–24.  The trial judge ultimately denied Plaintiff's motion, finding that there was sufficient evidence for the jury to consider whether Plaintiff had an intent to kill for the attempted murder charges.  City UMF, Fact 35; Trial Tr. 1453:10–18.

Plaintiff was ultimately acquitted of the attempted murder and aggravated assault charges but was convicted of drug possession.  City Mot. 9.

### F.    Procedural History

Plaintiff filed the present suit on October 12, 2018, asserting eight claims against the County of Santa Clara, the City of San Jose, and their relevant employees.  ECF No. 1.  These claims changed over the course of two rounds of motions to dismiss brought by both City and County Defendants, as well as a voluntary dismissal.

United States District Court
Northern District of California

1    Presently, Plaintiff asserts five claims against the City Defendants, as follows: (1) the

2    Fourth Claim against Defendant Officers for Deliberate Fabrication of Evidence; (2) the Fifth

3    Claim against Defendant Officers for Failure to Disclose Exculpatory or Impeachment Evidence;

4    (3) the Sixth Claim against Defendant Officers for Conspiracy to deprive constitutional rights; (4)

5    the Seventh Claim against Defendant Officers for Unlawful Detention and Malicious Prosecution;

6    and (5) the Eighth Claim against the City for municipal liability based on continued unlawful

7    detention and malicious prosecution.  *See generally* FAC.  The City Defendants seek summary

8    judgment in their favor as to all five claims against them.  ECF No. 132.

9    Against the County and County officials, Plaintiff maintains two claims: (1) the First

10   Claim against County officials Timur Ruban, Matthew Reeves, Pedro Dominguez, and Jereh

11   Lubrin; and (2) the Second Claim against the County for municipal liability based on cruel and

12   unusual conditions of confinement.  *See generally* FAC.  The Third and Ninth Claims for

13   intentional infliction of emotional distress were voluntarily dismissed by Plaintiff and by the

14   Court, respectively.  ECF Nos. 62, 93.  The County only seeks summary judgment on the

15   municipal liability claim.  ECF No. 136.

16   Finally, Defendant Lubrin seeks summary judgment in his favor as to the one claim against

17   him: the First Claim for Cruel and Unusual Conditions of Confinement.  ECF No. 164.

18   On January 21, 2022, the Court took all motions under submission without oral argument.

19   ECF No. 187.  After the motions were submitted, the parties each filed statements of recent

20   decision, and Plaintiff has sought leave to supplement the record.  ECF No. 211.

21   **II.    LEGAL STANDARD**

22   Summary judgment is proper where the pleadings, discovery, and affidavits show that

23   there is "no genuine issue as to any material fact and that the moving party is entitled to judgment

24   as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it would affect the outcome of

25   the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a

26   reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*,

27   477 U.S. 242, 248-49 (1986).

28   Case No.: 5:18-cv-06264-EJD

United States District Court
Northern District of California

The party moving for summary judgment bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party can meet this initial burden, the burden then shifts to the non-moving party to produce admissible evidence and set forth specific facts showing that a genuine issue of material fact does indeed exist for trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). If the non-moving party produces enough evidence to show a genuine issue of material fact exists, then it defeats the motion; otherwise, the moving party is entitled to summary judgment. *Id.*

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility determinations; any disputed factual issues must be resolved in favor of the non-moving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). However, the Court need not credit the non-moving party's version of events where it is blatantly contradicted by the record. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

## III.  CITY AND OFFICER DEFENDANTS

City Defendants move for summary judgment on all claims asserted against them. "To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). None of the Defendants dispute the color of state law element, so the sole issue for the § 1983 claims is whether Defendants deprived Plaintiff of a federally protected right.

### A.   Fourth Claim: Fabrication of Evidence

Plaintiff's Fourth Claim alleges that City Defendants violated his right to a fair preliminary

United States District Court
Northern District of California

1    hearing and trial because they had deliberately fabricated evidence, including key fob data,

2    witness statements, victim testimony, and shell casing evidence.  FAC ¶¶ 271–75.

3          The Ninth Circuit recognizes a "clearly established constitutional due process right not to

4    be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by

5    the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001).  A plaintiff can

6    prove "deliberate fabrication" either with direct evidence or with circumstantial motive evidence.

7    *See Richards v. Cnty. of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022).  Circumstantial

8    evidence may be established by (a) continuing an investigation into the plaintiff despite

9    knowledge that he was innocent or (b) the use of investigative techniques so coercive and abusive

10   that defendants knew or should have known that those techniques would yield false information.

11   *Id.* (citing *Devereaux*, 263 F.3d at 1076).

12         As an initial point, City Defendants argue that the issue of fabrication has been collaterally

13   estopped by the criminal court's finding of probable cause to detain Plaintiff at the preliminary

14   hearing.  City Mot. 16–17.  However, probable cause is not a required finding or relevant issue

15   under the *Devereaux* deliberate fabrication framework summarized above.  Accordingly, even if

16   the finding of probable cause receives preclusive effect, it has no bearing on a *Devereaux* claim.

17         Onto the merits, City Defendants argue that Plaintiff has no evidence to support his FAC

18   allegations that City Defendants (1) purposefully manipulated key fob data; (2) misrepresented

19   witness statements; or (3) used suggestive interview techniques.  City Mot. 12–13; FAC ¶¶ 271–

20   75.  In his opposition brief, Plaintiff refers the Court without citation to "glaring credibility

21   problems with Alvaro and Bicente Castro's accounts of the incident and the events in the hours

22   preceding it" and Officer Tessler's admission that the victims' "three hours prior to the shooting

23   were unaccounted for."  Opp. City 7.  Plaintiff otherwise makes no effort to argue or defend any of

24   the following allegations in the FAC: the alleged manipulation of key fob data (FAC ¶ 271),

25   allegedly manipulative interview techniques using receipts to "feed information" for the victims'

26   statements (FAC ¶ 274), or alleged misrepresentations regarding bullet shell casings at the scene

27   of the crime (FAC ¶ 275).

28   Case No.: 5:18-cv-06264-EJD
     ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT
     11

United States District Court
Northern District of California

Plaintiff has failed to present a genuine dispute as to why City Defendants are not entitled to summary judgment on the deliberate fabrication claim.  The opposition's cursory and uncited references to facts presumably somewhere in the record fall short of Plaintiff's obligations to produce at least some admissible evidence and set forth specific facts showing a genuine dispute.  Opp. City 7.  Furthermore, even if Plaintiff did provide specific evidence of "glaring" credibility problems, "not all inaccuracies in an investigative report give rise to a constitutional claim.  Mere carelessness is insufficient, as are mistakes of tone." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (internal citation, brackets, and quotation marks omitted).  And here, Plaintiff has not provided any evidence to suggest that the alleged "glaring credibility problems" with the victims' accounts can be chalked up to anything more than "inaccuracies in an investigative report" or "mere carelessness."  Opp. City 7–8.  Indeed, Plaintiff's opposition brief is bereft of any actual quotations or excerpts from these witness statements that evidence "glaring credibility problems."  Nor would a three-hour gap in the shooting victims' recollections support an inference that the City Officers were fabricating evidence instead of being merely careless.  Finally, to the extent Plaintiff relies solely on his own recollections of his ingresses and egresses from his apartment as circumstantial evidence of Officer Tessler's deliberate fabrication (City UMF, Fact 24), this evidence does not fall under either of the two methods by which deliberate fabrication can be established circumstantially.  *Devereaux*, 263 F.3d at 1076.

The Court finds that City Defendants has pointed out an absence of evidence supporting Plaintiff's fabrication of evidence claim, and Plaintiff has failed to present a genuine dispute of material fact for trial.  Accordingly, the Motion is GRANTED as to the Fourth Claim against the Officer Defendants.

## B.      Fifth Claim: Failure to Disclose Exculpatory Evidence

Plaintiff's Fifth Claim alleges that City Defendants suppressed and destroyed exculpatory evidence, depriving him of his rights to a fair preliminary hearing and to be free from unjustified pretrial detention.  Specifically, the FAC alleges that the Officer Defendants misrepresented witness statements, failed to memorialize evidence that one of the victims had a knife, and

destroyed copies of initial witness statements taken by the Officers.  FAC ¶¶ 282–83.

To meet their initial burden as the moving party, City Defendants have both presented affirmative rebuttal evidence and highlighted the absence of evidence to support Plaintiff's other allegations.  City Mot. 13–16.  They also argue that certain findings made by the criminal court collaterally estops Plaintiff from meeting the requirements for this Claim.  *Id.* at 16–20.

Plaintiff argues that the City Defendants' failure to disclose exculpatory evidence deprived him of two different constitutional rights: the right to be free from unjustified pretrial detention (the *Tatum* violation) and the right to a fair hearing (the *Brady* violation).  Each theory has its own separate required elements.

### 1.    Collateral Estoppel

As with Plaintiff's *Devereaux* claim, City Defendants attempt again to assert the collateral estoppel defense based on the criminal court's finding of probable cause at the preliminary hearing.  City Mot. 16–17.  And, as with the *Devereaux* claim, probable cause is not a required element of either a *Tatum* or *Brady* claim.  *See infra* Sections III(B)(2)–(3).  Accordingly, even if Plaintiff was collaterally estopped from re-litigating "probable cause," it would not preclude his ability to establish the requisite elements for a *Tatum* or *Brady* violation.

### 2.    *Tatum* Violation

In addition to their collateral estoppel defense, City Defendants submit that Plaintiff is unable to establish the necessary elements for a *Tatum* violation.  The Court agrees.

To establish a constitutional violation under *Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014), Plaintiff must show that (1) he was subjected to a detention of "unusual length"; (2) the detention was caused by investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors; and (3) the officers had understood the risks to Plaintiff's rights from withholding the information or were completely indifferent to those risks.  *Id.* at 819–20.  Plaintiff fails to present evidence of a genuine dispute on the second and third *Tatum* requirements.

To meet the "highly significant exculpatory evidence" requirement, Plaintiff only mentions (without citing) to "Monzon['s] and Tessler's fabricated and manufactured witness statements,"

which the Court presumes is a reference to the Castro brothers' two victim statements "that had been crafted with Tessler's assistance." Opp. City 7–8. However, Plaintiff fails to explain how the potential bias and credibility issues with these witness statements are "not merely material but *strongly* indicative of [his] innocence." *Tatum*, 768 F.3d at 820 (emphasis in original). The witness statements and their potential biases do not "strongly indicat[e]" innocence when Plaintiff had indisputably shot the Castro brothers and fled the scene. City UMF, Fact 1; *cf. Hernandez v. Kennedy*, 595 F. App'x 673, 675 (9th Cir. 2014) (finding that evidence that plaintiff had been coaxed to "violate the restraining order do not prove his innocence of violating it"). Unlike *Tatum* and its progeny, there was no risk of mistaken identity when the City Officers detained Plaintiff.

With respect to the third *Tatum* requirement regarding the City Defendants' intent, Plaintiff has proffered no admissible evidence and has only cited to the FAC. Opp. City 8 ("[H]ere, Plaintiff alleges Defendants disregarded the risk of his deprivation of liberty."). This is plainly insufficient to defeat a motion for summary judgment. *See Celotex*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go *beyond the pleadings* and . . . designate 'specific facts showing that there is a genuine issue for trial.'") (emphasis added).

Accordingly, there is no genuine dispute that Plaintiff cannot establish a *Tatum* claim.

### 3.   *Brady* Violation

Plaintiff also argues that the City Defendants' failure to disclose exculpatory evidence constituted a *Brady* violation. Opp. City 8–9. The three elements of a *Brady* violation are: (1) the evidence is favorable to the accused, (2) the prosecution suppressed the evidence, and (3) the evidence is material. *Hooper v. Shinn*, 985 F.3d 594, 616 (9th Cir. Jan. 8, 2021).

Evidence may be deemed "suppressed" even where the failure to disclose favorable evidence was unintentional or where the prosecutor was unaware that others, acting on the government's behalf, had such evidence. *Ochoa v. Davis*, 16 F.4th 1314, 1327 (9th Cir. 2021), cert. denied, 214 L. Ed. 2d 35 (Oct. 3, 2022). When a *Brady* violation is alleged against law enforcement officers—as Plaintiff does here—under § 1983, the plaintiff must show that the "officers acted with deliberate indifference to or reckless disregard for an accused's rights or for

United States District Court
Northern District of California

the truth in withholding evidence from prosecutors." *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1088–89 (9th Cir. 2009).  Evidence is "material" only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  There is a "reasonable probability" of prejudice when the suppression "undermines confidence in the outcome of the trial."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

City Defendants assert that Plaintiff cannot produce evidence that Officers Monzon and Hall intentionally destroyed audio recordings of their initial interviews with the shooting victims. City Mot. 13.  In support, City Defendants introduce deposition testimony from Mr. Meador, a third-party engineer who manages the DCS and who testified that the Officers did not have the capability to delete files within DCS.  *Id.*; *see also* Klimczak Decl., Ex. H ("Meador Dep."), 24:25–26:7.  Plaintiff responds with the undisputed facts that the two victims' audio interviews— by some means—were rendered inaccessible in a criminal case where the defendant was asserting self-defense, facts that Plaintiff only learned in the middle of trial.  Johnson Decl. ¶¶ 5–6; *see also* City UMF, Facts 4, 11.

The Court finds that there is a genuine dispute as to whether Officers Monzon and Hall acted with deliberate indifference or reckless disregard for the truth when they failed to upload the two victims' interview recordings to the City's DCS database.  There are two competing narratives here.  If a reasonable jury were to believe the City Officers' and Mr. Meador's statements, then it could conclude that the failures to properly upload the audio files did not rise to the level of culpability required for deliberate indifference or reckless disregard.  Plaintiff, however, proffers deposition testimony that the Officers Monzon and Hall failed to confirm if their recordings were actually uploaded and failed to report the missing evidence once they discovered it was missing. *See* City UMF, Issue 2, ECF No. 180, at 17.  An equally reasonable jury could infer from these facts that the Officer Defendants conveniently turned a blind eye to the technical flaws in the City's DCS when the files at issue could be used to impeach their written reports.  Mr. Meador's testimony that the Defendant Officers did not have authority to *delete* files would not preclude the

1    inference that the Officers acted with deliberate indifference in failing to *upload* files in the first

2    instance.  *See* City UMF, Facts 4, 11 (acknowledging that Officers Monzon and Hall "attempted to

3    upload the audio recording to the [DCS] database, but the file did not get uploaded").  This

4    inference is also supported by the fact that Officer Hall's recorded interview with Bicente's doctor

5    at the hospital *was* successfully uploaded and accessible.  Trial Tr. 704:9–21.  The dispute

6    between these dueling inferences, whose resolution would be material to a finding of suppression

7    under *Brady*, is not up to this Court to resolve on a motion for summary judgment.[1]

8            As to the Fifth Claim against Officer Tessler, however, the Court does not find that a

9    similar dispute exists.  First, Plaintiff's proffered evidence regarding the missing audio recordings

10   do not extend to Officer Tessler.  City UMF, Issue 2, ECF No. 180, at 17.  Second, the only

11   potential *Brady* allegations against Officer Tessler relate to his alleged modifications of Plaintiff's

12   key fob data and an email where Officer Tessler requested an uploaded statement to be deleted

13   from Plaintiff's case file.  *See* Marinho Decl., Ex. D, ECF No. 168-4.  Plaintiff has not introduced

14   any evidence that could give rise to an inference that Officer Tessler manipulated the key fob data;

15   he has only pointed to the fact that Officer Tessler did not specify the format he provided the data

16   to the District Attorney's Office.  City UMF, Fact 24.  As to Officer Tessler's request to delete a

17   file from Plaintiff's case file, the email in question indicates on its face that Officer Tessler had

18   "uploaded a statement to the wrong case number."  Marinho Decl., Ex. D.  Plaintiff does not

19   proffer any evidence suggesting that the purportedly deleted file was not, in fact, related to an

20   entirely different case, much less that Officer Tessler had requested it removed with "deliberate

21   indifference" or "reckless disregard" for Plaintiff's rights.  With respect to both of these instances,

22   Plaintiff fails to raise a genuine dispute that Officer Tessler had violated his *Brady* rights.

23

24   ---

25   [1] City Defendants primarily focus on the "deliberate indifference" and suppression requirements,
     but to the extent they dispute other *Brady* elements, the Court also finds that there is at least a
     genuine and triable issue as to whether the victim interview recordings taken closest in time after
26   the Plaintiff's shooting would have "tend[ed] to call the government's case into doubt" (*i.e.*, were
     favorable) and whether "there is a reasonable probability that, had the evidence been disclosed to
27   the defense, the result of the proceeding would have been different" (*i.e.*, were material).  *Ochoa*,
     16 F.4th at 1326–27.

28   Case No.: 5:18-cv-06264-EJD
     ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

* * *

In summary, the Court finds that Plaintiff has failed to demonstrate that there exists a genuine dispute relating to his claim for a *Tatum* violation or with respect to Officer Tessler's conduct. However, Plaintiff has adduced sufficient evidence to raise a genuine dispute as to whether Officers Monzon and Hall acted with "deliberate indifference or reckless disregard" when they failed to upload the victims' audio recordings to the DCS database. Accordingly, the Court GRANTS City Defendants' Motion as to Officer Tessler and DENIES the Motion with respect to Officers Monzon and Hall.

### C.      Sixth Claim: Conspiracy

To establish a conspiracy claim under §1983, plaintiffs must show "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010). Because "[c]onspiracy is not itself a constitutional tort under § 1983 . . . there must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). Plaintiff may "rely on indirect or circumstantial evidence to buttress his conspiracy claim. He must, however, provide specific facts showing that a conspiracy exists in order to survive summary judgment." *Stiglich v. Contra Costa Cnty. Bd. of Sup'rs*, 106 F.3d 409 (9th Cir. 1997).

City Defendants move for summary judgment on Plaintiff's conspiracy claim based on his inability to establish a constitutional violation under any of his other claims. City Mot. 21. In their reply, they also argue that Plaintiff cannot show there was an agreement or meeting of minds to violate Plaintiff's rights. City Reply 10–11. Plaintiff relies on the facts that Officers Monzon and Hall "claimed to have uploaded the audio recordings to DCS when the neutral third-party vendor Dave Meador says they did not" and "the fact that Tessler asked someone else within the department to delete a statement from Plaintiff's case in DCS." Opp. City 13.

First, with respect to Officer Tessler, the Court found that Plaintiff has failed to provide evidence to support a genuine dispute as to constitutional violations relating to Officer Tessler's

United States District Court
Northern District of California

1    manipulation of key fob data or his request to delete a statement erroneously uploaded to

2    Plaintiff's case file. *See supra* Sections III(A), (B)(3). Accordingly, there is no genuine dispute

3    that the civil conspiracy claim cannot be maintained against Officer Tessler because there is no

4    surviving underlying constitutional violation against him.

5         Second, regarding Officers Monzon and Hall, the Court found that there are genuine

6    disputes of material fact as to whether these officers suppressed exculpatory evidence by

7    independently failing to upload the audio recordings for the victims' initial interview onto DCS.

8    *See supra* Section III(B)(3). As a result, there remains at least two potential constitutional

9    violations against these Defendant Officers, which defeats the only basis raised in the City

10   Defendants' opening Motion.

11        City Defendants, however, argue for the first time in their reply that Plaintiff is also unable

12   to show that there exists an express or implied agreement to deprive him of his constitutional

13   rights. *Compare* City Mot. 21 *with* City Reply 10–11. As an initial matter, "[r]aising new

14   arguments in a reply brief is classic sandbagging," *California Sportfishing Prot. All. v. Pac. States*

15   *Indus., Inc.*, 2015 WL 5569073, at *2 (N.D. Cal. Sept. 22, 2015), and City Defendants provide no

16   explanation as to why it did not assert this argument in their opening motion. Even if this

17   argument was properly raised in City Defendants' opening motion, the Court finds that the

18   undisputed facts raise a genuine dispute as to whether Officers Monzon and Hall had conspired in

19   failing to upload the victim interviews' audio recordings. The undisputed circumstantial evidence

20   here indicate that Officer Monzon failed to upload the audio recording for Alvaro Castro's

21   interview into the DCS database and, on a purportedly separate occasion, Officer Hall similarly

22   failed to upload the audio recording for Bicente Castro's interview. City UMF, Facts 4, 11. Both

23   failed uploads occurred with respect to victims whose testimony would be central to Plaintiff's

24   self-defense claim, whereas Officer Hall had no issues uploading the audio recording of his

25   interview with Bicente's doctor. Trial Tr. 704:9–21. Moreover, neither Officer reported the

26   missing evidence or the fact that there may be an error with DCS when they learned the recordings

27   could not be located. *See* City UMF, at 17–18. A reasonable jury could infer from the fact that

28   Case No.: 5:18-cv-06264-EJD

1  two officers independently failed to upload similar potentially exculpatory audio files that there

2  existed an implied agreement or meeting of minds to do so.

3      In summary, the Court DENIES City Defendants' Motion as to Plaintiff's Sixth Claim for

4  Conspiracy as to Officers Monzon and Hall but GRANTS the Motion as to Officer Tessler.

5      **D.    Seventh Claim: Malicious Prosecution and Unlawful Detention**

6      To prevail on a claim for malicious prosecution, a plaintiff "must show that the defendants

7  prosecuted her with malice and without probable cause, and that they did so for the purpose of

8  denying her equal protection or another specific constitutional right." *Freeman v. City of Santa*

9  *Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). City Defendants argue that Plaintiff cannot establish the

10  requisite "probable cause" element because that issue has been collaterally estopped by the

11  criminal court's finding of probable cause at the preliminary hearing. City Mot. 16–17. Plaintiff

12  responds that the prior probable cause finding is not entitled to preclusive effect because he has

13  alleged the Defendant Officers fabricated evidence in the preliminary hearing. Opp. City 12.

14      Unlike the City Defendants' assertions of collateral estoppel to preclude Plaintiff's

15  *Devereaux*, *Tatum*, and *Brady* claims, probable cause is an element to a malicious prosecution

16  claim. Accordingly, the Court considers whether the criminal court's probable cause findings

17  would preclude Plaintiff's ability to establish his Seventh Claim.

18      This Court applies California law on preclusion issues, which here sets forth five

19  requirements: "(1) the issue sought to be relitigated must be identical to the issue decided in the

20  earlier action; (2) the issue must have been actually litigated and (3) necessarily decided in the

21  earlier action; (4) the earlier decision must be final and made on the merits; and (5) the party

22  against whom issue preclusion is asserted must have been a party to the earlier action or in privity

23  with such a party." *Wige v. City of Los Angeles*, 713 F.3d 1183, 1185–87 (9th Cir. 2013) (citing

24  *Lucido v. Superior Ct.*, 51 Cal. 3d 335, 341 (1990)). "[A] ruling on sufficiency of the evidence at

25  a preliminary hearing would, in most cases, meet" the first three preclusion requirements, *i.e.*,

26  identical issues, actual litigation, and necessary decisions. *McCutchen v. City of Montclair*, 73

27  Cal. App. 4th 1138, 1146–47 (1999). However, "[o]ne notable exception to this rule would be in a

28  Case No.: 5:18-cv-06264-EJD

1    situation where the plaintiff alleges that the arresting officer lied or fabricated evidence presented

2    at the preliminary hearing." *Id.* at 1147.

3         For the same reasons noted in its discussion of Plaintiff's *Devereaux* claim, the Court finds

4    no genuine dispute that Plaintiff cannot prove that the City Defendants deliberately fabricated

5    evidence.  *See supra* Section III(A).  Plaintiff's reliance on the Court's rejection of the collateral

6    estoppel defense at the motion to dismiss stage is misplaced.  ECF No. 93, at 6–8.  Whereas mere

7    allegations of deliberate fabrication may be sufficient to survive a motion to dismiss, a motion for

8    summary judgment "requires the nonmoving party to go *beyond the pleadings* and . . . designate

9    'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (emphasis

10   added).  Plaintiff's citation to *Harris v. Roderick* is inapposite for the same reasons.  Opp. City 12.

11   Arising out of the infamous Ruby Ridge incident, *Harris* was a Ninth Circuit decision on a motion

12   to dismiss, where the plaintiff's allegations of fabricated evidence were accepted as true.  *Harris v.*

13   *Roderick*, 126 F.3d 1189 (9th Cir. 1997).  Its holding does not affect or satisfy Plaintiff's

14   obligation here to provide specific facts and evidence beyond the pleadings when challenged by a

15   motion for summary judgment.

16        Plaintiff also make a passing reference to *Patterson v. City of Yuba City*, invoking the

17   exception to collateral estoppel where the "issue of probable cause was not litigated at the

18   preliminary hearing for *tactical* reasons."  748 F. App'x 120, 122 (9th Cir. 2018) (emphasis

19   added).  Plaintiff has provided a declaration that he "did not testify at his [*sic*] preliminary hearing

20   based on advice of counsel, for strategic reasons."  Johnson Decl. ¶ 4.  This argument

21   misapprehends the exception; Plaintiff's decision not to testify at his preliminary hearing does not

22   mean that the issue of probable cause was not fully litigated by his counsel.  Indeed, the

23   preliminary hearing transcript plainly evidences a vigorous defense from Plaintiff's criminal

24   counsel.  *See generally* Klimczak Decl., Ex. B.

25        Because Plaintiff has failed to present a genuine dispute as to whether the City Defendants

26   had engaged in deliberate fabrication of evidence, no exception applies to block the preclusive

27   effect of the criminal court's probable cause finding.  *See McCutchen*, 73 Cal. App. 4th at 1147

28   Case No.: 5:18-cv-06264-EJD

1  (1999) ("[A] prior judicial determination at a preliminary hearing that there was sufficient

2  evidence to hold the plaintiff over for trial may, in some situations, preclude the plaintiff from

3  relitigating the issue of probable cause to arrest in a subsequent civil suit.").  The Court also finds

4  that (1) the issue of probable cause for malicious prosecution and unlawful detention is identical to

5  the issue of probable cause considered by the criminal court; (2) Plaintiff's criminal counsel

6  actually and fully litigated the issue, even if Plaintiff himself did not testify; (3) the criminal court

7  was required to make a determination on probable cause to hold Plaintiff over for trial; (4) the

8  probable cause finding was final and indeed even appealed; and (5) Plaintiff is obviously the same

9  party in the earlier action.  *See Wige*, 713 F.3d at 1185–87 (9th Cir. 2013).

10       Accordingly, the criminal court's finding of probable cause collaterally estops Plaintiff's

11  ability to show a lack of probable cause, as required by his malicious prosecution and unlawful

12  detention claim.  The City Defendants, therefore, are entitled to summary judgment in their favor.

13  The Court GRANTS City Defendants' Motion as to Plaintiff's Seventh Claim for Unlawful

14  Detention and Malicious Prosecution.

15      **E.**    **Eighth Claim: Municipal Liability (*Monell*)**

16       Finally, the City moves for summary judgment on Plaintiff's *Monell* municipal liability

17  claim for continued unlawful detention and malicious prosecution.  Plaintiff's *Monell* claim is

18  premised on two theories: (1) the SJPD had a policy or practice of failing to preserve potentially

19  exculpatory evidence, and (2) the SJPD had a policy or practice of failing to train or discipline

20  their employees regarding their constitutional evidentiary obligations.  *See* Opp. City 17–19.

21       "A government entity cannot be held liable under 42 U.S.C. § 1983, unless a policy,

22  practice, or custom of the entity can be shown to be a moving force behind a violation of

23  constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing

24  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  To establish a governmental entity's

25  liability, a plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which he

26  was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

27  indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force

28  Case No.: 5:18-cv-06264-EJD

United States District Court
Northern District of California

1    behind the constitutional violation." *Id.* at 900 (brackets omitted).  Absent a formal policy,

2    plaintiffs must show a "longstanding practice or custom which constitutes the standard operating

3    procedure of the local government entity" that is so "persistent and widespread" that it constitutes

4    a "permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

5         More specifically, "a municipal defendant can be held liable because of a failure to

6    properly train its employees [if] the government's omission [] amount[ed] to a 'policy' of

7    deliberate indifference to constitutional rights."  *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784,

8    793 (9th Cir. 2016).  Although it is "ordinarily necessary" for a plaintiff to demonstrate a "pattern

9    of similar constitutional violations by untrained employees," a pattern is not necessary where "the

10   unconstitutional consequences of failing to train [are] 'patently obvious' and the violation of a

11   protected right [is] a 'highly predictable consequence' of the decision not to train."  *Id.*

12        The Court first addresses Plaintiff's theory that the SJPD had a policy or practice of failing

13   to preserve potentially exculpatory evidence, such as the victims' interview audio recordings.  As

14   to this theory, Plaintiff has not presented any evidence that Officer Monzon's and Hall's failures to

15   upload the victims' interview recordings were pursuant to a SJPD-wide policy or practice, as

16   opposed to "isolated or sporadic incidents."  *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233

17   (9th Cir. 2011) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).  It would be strange

18   indeed for the SJPD, with the one hand, to provide audio recording devices to its officers and set

19   up the DCS database to store files with safeguards against unauthorized deletions and, with the

20   other, to implement a practice thwarting the operation of that system.  Accordingly, the Court

21   finds that there is no genuine dispute as to whether there existed a policy or practice of failing to

22   preserve potentially exculpatory evidence.

23        Plaintiff's second theory claims that there was a SJPD practice or policy for failure to

24   properly train its employees in preserving evidence or a failure to investigate incidents of missing

25   evidence.  Opp. City 16, 18–19.  In support of this theory, Plaintiff has not provided evidence of a

26   pattern or other incidents where evidence was missing, but he does provide deposition testimony

27   from Officers Hall and Monzon, indicating there were:

28   Case No.: 5:18-cv-06264-EJD
     **ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT**

- No policies requiring officers to confirm files were successfully uploaded to DCS database (Hall Dep. 26:19–27:10);

- No policies requiring officers to report missing evidence (Hall Dep. 35:12–24; Monzon Dep. 16:19–17:2);

- No policies requiring officers to report software or DCS issues (Hall Dep. 38:16–39:17; 41:11–15); and

- No policies for investigating, disciplining, or providing additional training to officers who were involved in incidents of missing evidence (Hall Dep. 42:4–44:13; Monzon Dep. 40:14–41:4).

Additionally, Officer Hall testified that he did not believe the missing audio file "was a big deal" and admitted that, at the time, he did not have "the training nor the experience to really understand [that there was a problem]". Hall Dep. 35:19–24; 39:7–17. He also testified that, when he learned Officer Monzon's audio recording was also missing, he thought the missing evidence "was most likely a systems error or something." Hall Dep. 40:23–41:4. That said, Officer Hall also testified that he had received some hands-on training on DCS. Hall Dep. 10:16–11:3.

Notwithstanding the absence of a pattern of unconstitutional activity, Plaintiff's evidence here presents a genuine and triable dispute as to whether the SJPD was deliberately indifferent to the need for further training or investigation to avoid potential *Brady* violations by its employees. Specifically, the Court finds that a reasonable jury could infer that the loss of potentially exculpatory evidence was an "obvious" or "highly predictable consequence" of the SJPD's decision not to have policies requiring officers to confirm successful DCS uploads, to report missing evidence or DCS issues, or to receive further DCS training if they were involved in an incident of lost evidence. As the Ninth Circuit held in *Kirkpatrick*,[2] "[t]he lack of a formal policy is not necessarily unconstitutional if" there had been no incident of constitutional import. 843 F.3d at 796. "Nor does a single unconstitutional incident [such as Officers Hall's and Monzon's failure to upload the interview recordings], without more, establish that a municipality failed to provide proper training." *Id.* However, the combination of both of these elements—*i.e.*, (1) SJPD officers' failure to upload exculpatory evidence on two separate occasions and (2) testimony that

---

[2] City Defendants do not address or mention *Kirkpatrick* at all in their reply brief.

there was no policy in place to prevent, report, or remediate incidents of missing DCS evidence—"raises more than a spectre of deliberate indifference" that exculpatory evidence may be lost to the detriment of defendants' constitutional rights.  *Id.*

Because the Court finds that there is a genuine dispute as to whether the failure to maintain policies to prevent, report, or remediate incidents of missing DCS evidence would demonstrate deliberate indifference towards the risk of *Brady* violations, summary judgment on Plaintiff's *Monell* claim is inappropriate.  Accordingly, the Court DENIES City Defendants' Motion as to the Eighth Claim for *Monell* liability against Defendant City of San Jose.

* * *

In summary, the Court GRANTS IN PART and DENIES IN PART City Defendants' Motion for Summary Judgment, as follows:

- GRANTED as to the FAC's Fourth Claim against all Officer Defendants;
- GRANTED as to the Fifth Claim against Officer Tessler and DENIED as to Officers Monzon and Hall;
- GRANTED as to the Sixth Claim against Officer Tessler and DENIED as to Officers Monzon and Hall;
- GRANTED as to the Seventh Claim against all Officer Defendants; and
- DENIED as to the Eighth Claim against the City of San Jose.

## IV.   COUNTY DEFENDANT

The County of Santa Clara moves for summary judgment as to Plaintiff's Second Claim for Cruel and Unusual Conditions of Confinement, asserted against the County under *Monell*.  County Mot., ECF No. 136.

The *Monell* claim as alleged in the FAC is premised on the County's policy and practice of deliberate indifference to the excessive force and cruel and unusual punishment violations by its employees, including "isolating people in inhumane conditions."  FAC ¶¶ 253, 255–56.  Plaintiff also asserts that the County has failed to train its correction deputies and failed to investigate incidents of constitutional violations.  *Id.* ¶¶ 257, 259.

The Court first addresses the parties' evidentiary objections before turning to *Monell*.

United States District Court
Northern District of California

### A.    Evidentiary Objections

Plaintiff moves to strike the Duran Declaration introduced by the County.  Opp. County 8–12.  The Court DENIES Plaintiff's motion with respect to Captain Duran's references to the "Classification Policy, Goals, and Objectives, Policy 13.01, effective as of December 2, 2022," because the County has attested that the policy was produced in discovery on May 7, 2021.  Botha Reply Decl. ¶ 3, ECF No. 158.  The Court also DENIES AS MOOT Plaintiff's motion to strike portions of the Duran Declaration summarizing portions of Plaintiff's Department of Corrections classification and housing records, because the Court does not rely on Plaintiff's specific records for its decision.  *See infra* Section IV(B)(2).

The County has objected to several exhibits in Plaintiff's opposition.  County Reply 3–6.  Most relevantly, the County objected to Plaintiff's Exhibit T, the "Management Audit of the County of Santa Clara Sheriff's Custody Operations" ("County Audit") as hearsay.  Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if, *inter alia*, it "was made by a person whom the party authorized to make a statement on the subject," Fed. R. Evid. 801(d)(2)(C), or if it was made "by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).  The County Audit report was exhibited by Plaintiff's counsel who testified that it was prepared by the Board of Supervisors Management Audit Division and was signed by Cheryl Solov, the Management Audit Manager.  Powell Decl. ¶ 11.  Ms. Solov's cover letter also states that the audit "was added to the Management Audit Division's work plan by the Board of Supervisors of the County of Santa Clara, pursuant to the Board's power of inquiry specified in Article III, Section 302(c) of the Santa Clara County Charter."  County Audit, Bates stamped PLTF_Rule26_000537.  Accordingly, the Court finds that the County Audit may be considered as a non-hearsay statement and DENIES the motion to strike the County Audit.  With respect to the remaining objections as to Plaintiff's untimely disclosed documents and lack of pin citations to exhibits,[3] the Court finds such practices

---

[3] Plaintiff purportedly only produced 8 documents out of 37 exhibits in his opposition.  *See* County Reply 5.

1   to be concerning and unbefitting of competent counsel.  However, in the interests of engaging with

2   the merits of the case, the Court will decline at this time to strike Plaintiff's submitted evidence to

3   the extent any portion did not comply with disclosure and citation requirements.

4         Finally, the Court finds good cause and GRANTS Plaintiff's Motion for Leave to

5   Supplement the Record with the Final Report on the Andrew Hogan incident, prepared by the

6   County's Office of Correction and Law Enforcement Monitoring ("OCLEM").  ECF No. 211.

7   **B.      Second Claim: Municipal Liability (*Monell*)**

8         Following Plaintiff's opposition, the only *Monell* theories that Plaintiff continues to pursue

9   are: (1) the County's failure to investigate and deliberate indifference towards deputies' use of

10  excessive force, Opp. County 15–21; and (2) the County's custom of housing pretrial detainees in

11  solitary confinement without minimum out-of-cell time, *id.* at 21–24.[4]

12        As summarized above in Section III(E), "[a] government entity cannot be held liable under

13  42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving

14  force behind a violation of constitutional rights."  *Dougherty*, 654 F.3d at 900.  To establish a

15  governmental entity's liability, a plaintiff must show: "(1) that [the plaintiff] possessed a

16  constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that

17  this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the

18  policy is the moving force behind the constitutional violation."  *Id*.  Absent a formal governmental

19  policy, plaintiffs must show a "longstanding practice or custom which constitutes the standard

20  operating procedure of the local government entity" that is so "persistent and widespread" that it

21  constitutes a "permanent and well settled city policy."  *Trevino*, 99 F.3d at 918.

22  **1.      Deliberate Indifference to Excessive Force**

23        Plaintiff maintains that the County is liable under *Monell* for its deliberate indifference in

24  failing to investigate and discipline incidents of excessive force.  Opp. County 15–19.  In support,

25  _____

26  [4] Plaintiff concedes that the County "does not have a policy, practice, or custom of providing
    intentionally indifferent medical care for serious medical needs of inmates."  County UMF, Facts
27  44–52.  He also concedes that he "was not housed in inhumane condition[s]," though he disputes
    that he received the minimum out-of-cell time.  County UMF, Facts 37–42.

28  Case No.: 5:18-cv-06264-EJD
    ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

United States District Court
Northern District of California

1   he primarily relies on (1) deposition testimony taken in other § 1983 cases involving the County

2   that have since settled; and (2) the County Audit's finding that the Santa Clara Custody Bureau

3   had failed to provide full access to its "use of force" data.  *Id.* at 16–18, 20–21; *see also supra*

4   Section II(C)(3).  As discussed below, the Court finds that neither set of evidence—individually or

5   in the aggregate—suffice to establish a genuine dispute of material fact as to a practice or custom

6   of excessive force.

7         With respect to the deposition testimony taken in other cases, the Court finds that Plaintiff

8   has not provided evidence that his alleged deprivation of constitutional rights is substantially

9   similar to those other § 1983 cases, such that a jury could infer "that the policy is the moving force

10  behind the constitutional violation."  *Dougherty*, 654 F.3d at 900.  For instance, Plaintiff provides

11  evidence that, in the *Rikki Martinez v. County of Santa Clara* litigation (Case No. 16-cv-0626-

12  LHK), an IAU investigator had admitted to requiring "clear and convincing" evidence to

13  determine deputies' culpability instead of "preponderance of the evidence" as required by the IAU

14  Policy.  Opp. County 6–7; County UMF, Fact 4.  However, Plaintiff does not provide any

15  evidence that this custom or practice occurred in the County's investigation into *his* grievance, *i.e.*,

16  that the IAU had reviewed Plaintiff's grievance using a "clear and convincing" standard.  *See*

17  County UMF, Facts 5–6 (undisputed).  Plaintiff also relies on testimony elicited in another case,

18  *Aaron Steward v. County of Santa Clara* (18-cv-04119-SI), where an IAU investigator had

19  omitted certain facts when forwarding the case to the District Attorney.  Opp. County 16–17.

20  Once again, however, Plaintiff neglects to establish the nexus between the practice evidenced in

21  *Steward* with the facts of Plaintiff's case.[5]  County UMF, Fact 5 (undisputed fact that the District

22  Attorney declined to file charges against individual County Defendants).  Indeed, this practice of

23

24  _____

25  [5] The same reasoning applies to Plaintiff's Record Supplement, which involved an IAU
    investigation that was prematurely closed without explanation or a finding.  ECF No. 211-3, at

26  43–46.  Plaintiff does not provide any evidence that—even if this single incident could be
    considered a custom or practice—it was the custom or practice that deprived *Plaintiff* of his

27  constitutional rights.  Indeed, the OCLEM's subsequent investigation into the incident and the
    Board of Supervisors' order to publicly release the memorandum would suggest that the County is

28  *not* deliberately indifferent to risks of deficient investigations evidenced in the OCLEM report.

United States District Court
Northern District of California

relying on other cases litigated by Plaintiff's counsel is remarkably similar to the strategy expressly rejected in *Alegrett v. City & Cnty. of San Francisco*, 2014 WL 1911405, at *6 n.5 (N.D. Cal. May 13, 2014) (finding that "mere reference" to "four factually dissimilar civil rights actions [the same plaintiff's counsel] filed against the City over a three-year period . . . do[es] not demonstrate that the City has a policy of condoning excessive force").

And while Plaintiff has exhibited nine depositions from four other cases, he has not exhibited a single deposition taken in *this* case. *See generally* Powell Decl. Nor do the opposition brief or Plaintiff's declaration provide any specific facts regarding the deficiencies of the investigation into his own alleged incident of excessive force. *See generally* Opp. County 1–8; Johnson County Decl. As a result, the lack of factual development and evidence in Plaintiff's own case prevent him from being able to raise a genuine issue that his constitutional violation was caused by the policies exhibited in other § 1983 cases against the County. In other words, even if these other cases support a custom or practice, Plaintiff has not established that it was the same— or a substantially similar—custom or practice that deprived *him* of his constitutional rights.

Plaintiff's reliance on the County Audit's reported findings regarding the Custody Bureau is also misplaced. Opp. County 20–21. Although the County Audit indicated that the Custody Bureau was not very forthcoming with their "use of force" data (County Audit 32, 38), this alone does not evidence a practice or custom condoning excessive force, similar to the one Plaintiff allegedly experienced. *See Lozano v. Cnty. of Santa Clara*, 2019 WL 6841215, at *18 (N.D. Cal. Dec. 16, 2019) (dismissing § 1983 complaint where "[a]side from making cursory reference to . . . a "Blue Ribbon Commission" report . . . Plaintiff ha[d] not alleged that any other person was subjected to similar treatment"), *aff;d*, 2021 WL 4077000 (9th Cir. Sept. 8, 2021). To the contrary, the fact that the County's Board of Supervisors "promptly established a Blue Ribbon Commission" to "address concerns around inmate treatment and operations within the County Jail" (County Audit 31) would suggest that the County was *not* deliberately indifferent. As the Supreme Court indicated in *Connick v. Thompson*, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to

violate citizens' constitutional rights, the city may be deemed deliberately indifferent *if the policymakers choose to retain that program*." 563 U.S. 51, 61 (2011) (emphasis added). It follows, therefore, that where policymakers take affirmative action to investigate, identify over 600 potential reforms, and implement a new force policy, *see supra* Section II(C)(1), they cannot be said to be "deliberately indifferent" to constitutional violations arising from prior practices.

Finally, to the extent Plaintiff cites one other instance of alleged excessive force that he himself had witnessed (Johnson County Decl. ¶¶ 74–79), a total of two incidents fails to establish a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity" that is so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Trevino*, 99 F.3d at 918.

For the reasons outlined above, the Court finds that Plaintiff's proffered evidence does not raise a genuine and triable issue as to whether the County had a policy, practice, or custom that was deliberately indifferent to his constitutional right to be free from excessive force.

### 2.   Custom of Unconstitutional Solitary Confinement

Apart from his *Monell* theory premised on a custom of excessive force, Plaintiff also argues that the County violated his right to receive "constitutionally adequate exercise." Opp. County 21. This theory is evidenced entirely by "classification records [which] are sufficient to show a custom of housing people in solitary confinement due to their charges only." *Id.* at 22. The purported "custom" appears to be the County policy that prevented Plaintiff from being eligible to be "down classed" to a lower security housing on account of his attempted homicide charges. *Id.* Plaintiff, however, does not argue or explain in his opposition why this housing assignment policy is unconstitutional. *Id.* at 21–24. In fact, much of Plaintiff's opposition on this point appear to argue facts not present or relevant in this case. *See id.* at 23 (alleging that the challenged custom was "using force on mentally ill subjects without accommodating their disability"); 24 (citing to the *City of San Jose*'s custom "during arrests of mentally ill subjects"). The Court finds that Plaintiff has failed to raise a genuine issue as to whether a policy of classifying pretrial detainees and inmates for housing based on their charges is unconstitutional.

United States District Court
Northern District of California

1    Plaintiff also seeks to maintain his *Monell* claim based on assertions that he was placed in

2 solitary confinement and denied the minimum out-of-cell time.  Opp. County 21; Johnson County

3 Decl. ¶¶ 16–36, ECF No. 148.  Although the Court would be inclined to find that there may be a

4 genuine dispute as to whether Plaintiff received the mandatory minimum out-of-cell time,[6] he has

5 failed to adduce any facts that this failure was a widespread County policy, practice, or custom, as

6 opposed to an isolated or sporadic incident.  *See, e.g.*, *Hunter*, 652 F.3d at 1233.  Plaintiff relies on

7 a consent decree against the County entered in a prior case (Case No. 15-cv-05277-RMI), that

8 purportedly brought claims relating to the County's failure to provide out-of-cell time.  Powell

9 Decl., Ex. S.  However, the consent decree does not contain any County admissions.  To the

10 contrary, it contains a provision expressly barring the use of the decree "in any other case, claim,

11 or administrative proceedings, except that Defendant and its employees and agents may use this

12 Consent Decree and any statement contained herein to assert issue preclusion or res judicata."  *Id.*

13    Nor would the County Audit provide the basis for finding a policy of out-of-cell time

14 violations.  The County Audit expressly "did not find evidence to suggest lack of compliance with

15 the law" and indicated that the County denied any use of solitary confinement against inmates,

16 though the report did note that the County's out-of-cell time was a "distinct risk area."  County

17 Audit 39.  At the summary judgment stage, however, the mere possibility that similar violations

18 *may* exist fails to satisfy Plaintiff's obligation to set forth specific facts showing that a genuine

19 issue *does indeed* exist for trial, much less that such violations amounted to a practice or custom.

20    Accordingly, the Court finds that there is no genuine dispute with regards to Plaintiff's

21 inability to establish a "longstanding practice or custom" depriving inmates of their mandatory

22 out-of-cell time.  *Trevino*, 99 F.3d at 918.

23                                          * * *

24    In opposing the County's Motion for Summary Judgment, Plaintiff relied almost entirely

25 on deposition testimony provided in other § 1983 actions against the County.  Such evidence—no

26

27 ───────────────
[6] Johnson claims he was locked in his cell for 47 out of every 48 hours.  Johnson County Decl.
¶¶ 23, 30, 34; *see also supra* Section II(C)(4).

28 Case No.: 5:18-cv-06264-EJD
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT
30

United States District Court
Northern District of California

1  matter how strongly indicative of a practice or customs in their respective cases—cannot make up

2  for a lack of factual development in Plaintiff's own case, specifically his failure to establish a

3  common nexus to those other practices or customs.  Nor does his citation to the County Audit

4  satisfy Plaintiff's obligation to set forth specific facts evidencing a genuine issue; if anything, the

5  Audit would undermine Plaintiff's ability to demonstrate the County's deliberate indifference, as

6  required by *Monell*.

7  For these reasons, the Court finds that Plaintiff has failed to present a genuine issue of

8  material fact with respect to the Second Claim of municipal liability against the County.  The

9  County's Motion for Partial Summary Judgment is GRANTED.

10  **V.     DEFENDANT LUBRIN**

11  Finally, Defendant Lubrin moves for summary judgment as to the one claim against him: a

12  § 1983 claim for violation of Plaintiff's Fourteenth Amendment right to be free from cruel and

13  unusual conditions of confinement.  ECF No. 164.  Lubrin argues that (1) there is no evidence that

14  he violated any of Plaintiff's Fourteenth Amendment rights and (2), even if he did, he is entitled to

15  qualified immunity because there was no clearly established legal authority that his conduct was

16  unconstitutional.  *Id.*

17  **A.     Fifth Amendment Waiver**

18  Plaintiff argues that Lubrin's Motion should be denied outright because he had previously

19  invoked his Fifth Amendment rights to decline answering significantly portions of the FAC.  Opp.

20  Lubrin 3–5.  However, Lubrin's Motion does not rely on any new affirmative testimony he has

21  provided but rather is premised on Plaintiff's own affirmative admissions and allegations.  *See*

22  Stock Decl. ¶¶ 2–3 (attaching only Plaintiff's deposition and the County's separate statement of

23  facts as exhibits), ECF No. 163.  The Court, accordingly, declines Plaintiff's invitation to deny the

24  Lubrin Motion on the basis of alleged Fifth Amendment waiver.

25  **B.     Constitutional Violation**

26  The FAC asserts that Lubrin violated Plaintiff's rights to be "free from cruel and unusual

27  conditions of confinement" and "free from the use of excessive force by correctional deputies and

28  Case No.: 5:18-cv-06264-EJD

ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

other government actors." FAC ¶ 248. Plaintiff, however, concedes that "Lubrin did not subject Plaintiff to excessive force." Lubrin UMF, Facts 31, 34 (undisputed). In his opposition, Plaintiff only argues that Lubrin engaged in "aggressively punitive and assaultive behavior" by "enter[ing] the Plaintiff's cell while repeatedly saying to Plaintiff that he would perform cavity searches on all the black prisoners – such as himself." Opp. Lubrin 6–7. This assault "contribut[ed] to a string of unacceptable conditions of confinement which in their totality added up to a Fourteenth Amendment violation." *Id.* at 8.

Plaintiff's theory is unfounded. The consistent law in this circuit has been that mere threats of bodily harm fail to state a cause of action under § 1983—indeed, the Ninth Circuit had previously characterized Plaintiff's suggestion as "trivializ[ing] the eighth amendment." *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987); *see also Vaughn v. Smith*, 127 F.3d 1108 (9th Cir. 1997) (holding that racist remarks and threats to an inmate's life did not rise to the level of an Eighth Amendment violation). At the very least, Lubrin would also be "entitled to qualified immunity as *Gaut* was [and is] the law of the Ninth Circuit at the time of the alleged threats and harassment." *Hayes v. Cambra*, 203 F.3d 831 (9th Cir. 1999).

Plaintiff cites no authority that suggests mere threats—without the infliction of any actual force—would constitute cruel and unusual conditions of confinement or, indeed, any constitutional violation. The only case he cites involved a plaintiff that had expressly pled an assault claim under California law. Opp. Lubrin 7 (citing *Austin v. Terhune*, 367 F.3d 1167 (9th Cir. 2004)). Here, the FAC contains no allegation to support an assault claim against Lubrin. The persistent inquiry has been whether Lubrin violated Plaintiff's constitutional rights, not whether his actions constituted assault. Plaintiff's attempts to move the goal posts are not well taken.

Accordingly, the Court GRANTS Lubrin's Motion for Summary Judgment.

## VI.   CONCLUSION

Based on the foregoing, Defendants' Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART.

Specifically, the City Defendants Motion is GRANTED as to the FAC's Fourth Claim

United States District Court
Northern District of California

against all Officer Defendants; GRANTED as to the Fifth Claim against Officer Tessler and DENIED as to Officers Monzon and Hall; GRANTED as to the Sixth Claim against Officer Tessler and DENIED as to Officers Monzon and Hall; GRANTED as to the Seventh Claim against all Officer Defendants; and DENIED as to the Eighth Claim against the City of San Jose.

The County's Motion for Partial Summary Judgment on the FAC's Second Claim is GRANTED.

Defendant Lubrin's Motion for Summary Judgment on the FAC's First Claim is GRANTED.

**IT IS SO ORDERED.**

Dated: March 21, 2023

EDWARD J. DAVILA
United States District Judge